Maurice **WALLRATH**, Individually and as Independent Executor of the Estate of Virginia Wallrath, Deceased, Appellant,

v.

Robert S. **CALVERT**, Comptroller of Public Accounts et al., Appellees.

No. 11679.

Court of Civil Appeals of Texas.

Austin.

June 11, 1969.

Rehearing Denied July 2, 1969.

V. R. Campbell, Harry A. Nass, Jr., San Antonio, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Exec. Asst. Atty. Gen., W. V. Geppert, Staff Legal Asst. Atty. Gen., John R.

Grace, Fisher A. Tyler, Asst. Attys. Gen., Austin, for appellees.

HUGHES, Justice.

This suit is by Maurice Wallrath, Individually and as Independent Executor of the Estate of Virginia Wallrath, appellant, against Robert S. Calvert, Jesse James and Crawford Martin, Comptroller, Treasurer and Attorney General of Texas, respectively, to recover inheritance taxes paid under protest by the Estate of Virginia Wallrath.

Trial to the court without a jury resulted in judgment that appellant take nothing by his suit. The relevant facts are without dispute.

In November 1965 and January 1966 Maurice Wallrath opened two acounts in the Frost National Bank of San Antonio, one a checking account and one a savings account. At the suggestion of a bank employee, Mr. Wallrath and his sister, Miss Virginia Wallrath executed and returned to the bank cards containing survivorship agreements. Both cards have substantially the same wording and we copy only the card executed as to the checking account:

"

| Maurice Wallrath or Miss Virginia Wallrath | 540–358 |
| --- | --- |

We, the undersigned joint depositors, do hereby agree each with the other and with the FROST NATIONAL BANK OF SAN ANTONIO, TEXAS, that all sums deposited at any time in the COMMERCIAL DEPARTMENT of the FROST NATIONAL BANK OF SAN ANTONIO to the account of

Maurice Wallrath or Miss Virginia Wallrath

are and shall be owned by us jointly with right of survivorship, and shall be paid to the order of any of us during our joint lives, and upon the death of any of us, shall be paid to the order of any of the survivors of us, and that such payment shall be a full and sufficient discharge to said Bank.

We hereby agree to be bound by the rules printed on the reverse side of this card.

WITNESS our signature this 19 day of November, A. D. 19 65.

Mr. /s/ Maurice Wallrath
Miss /s/ Miss Virginia Wallrath"

The money in both of these accounts belonged to Mr. Wallrath at the time of the deposits. Miss Wallrath made no deposits to either of these accounts and made no withdrawals therefrom.

The Comptroller included one half of the amounts on deposit in these accounts at the time of the death of Miss Wallrath in her taxable estate for inheritance taxes.

On the trial, Mr. Wallrath testified that when he and his sister signed the cards at the suggestion of the bank that his purpose in executing the cards was to have someone in a position to take care of his obligations if he was unable to do so because of illness or some other reason. This testimony was admitted over the objection that it was an attempt to vary the terms of a written instrument and was inadmissible.

The legal effect of survivorship agreements of the type before us has been determined by our courts.

In Davis v. East Texas Savings and Loan Association, 163 Tex. 361, 354 S.W.2d 926

(1962), it was held that a savings and loan stock certificate purchased by a single man who after marriage had the certificate changed to read to him and his wife and they each executed a signature card which stated that the certificate was held by them as joint tenants with right of survivorship became the property of the wife upon the death of the husband, the Court saying:

"When the contract was made by L. L. Davis with East Texas, Mrs. Davis was thereby vested with a present, though defeasible, interest in the deposit. Her interest would have been defeated if the certificate had been changed by Davis or the deposit had been withdrawn before his death, or if Mrs. Davis had predeceased her husband. But when Davis died without the interest of Mrs. Davis having been defeated, she became the owner of the full title to the deposit. We know of no constitutional or statutory impediment to the making by a husband of such a contract affecting title to his separate funds."

Johnson v. Johnson, 306 S.W.2d 780, Tex. Civ.App., Amarillo, writ ref. (1957) held that a bank acount as to which a mother and son executed a joint account agreement providing for joint ownership as joint tenants with right of survivorship became the property of the son upon the death of the mother, the Court saying:

"Under the authority of the case of Adams v. Jones supra we hold the instrument creating the joint bank account in the Perryton National Bank created a present contractual right whereby either of the signatories to the instrument could withdraw any or all of the funds deposited at any time after the creation of the account and the right of the survivor of them to withdraw such funds at the death of either was created in praesenti and upon the death of Lula Lavernia Johnson, Bruce Johnson had the legal right to withdraw such funds as remained in the joint account as his own property."

Art. 14.01, Taxation-General, Vernon's Ann.Civ.St., provides, in part, "All property within the jurisdiction of this State * * * which shall pass absolutely * * * by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor, shall, upon passing to or for the use of any person * * *" be subject to a tax.

In Calvert v. Fort Worth National Bank, 163 Tex. 405, 356 S.W.2d 918 (1962) it was stated, "From a reading of our inheritance tax statutes, we think the basic plan and purpose of the Legislature was to levy the tax upon the privilege of succeeding to property belonging to a decedent at the time of his death. * * *"

The defeasible interest or ownership which Miss Wallrath acquired in these accounts upon the execution of the agreements described reverted to Maurice Wallrath upon her death, which event, in this case, was the generating cause of such reversion. The sum which reverted was one half of the joint account, and this amount we believe was taxable under the statute above cited[1] unless the testimony of Mr. Wallrath as to his mental reservations when such agreements were made is to be given effect. This question would be of simple resolution except for the case of Ottjes v. Littlejohn, 285 S.W.2d 243, Tex.Civ.App. Waco, writ ref. n. r. e. (1956).

In that case the Court held that parol evidence was admissible to vary the terms of an unambiguous written agreement executed by the parties and delivered to the bank of the same purport as evidenced by the signature cards before us. The Court in that opinion referred to 33 A.L.R.2d, p. 573 and supplemental annotations where the cases pro and con are listed and digested.

An application for writ of error was filed in Ottjes which we have examined. The point that the Court erred in holding parol evidence admissible was directly presented to the Supreme Court and its attention was

---

1. The Attorney General has so ruled on several occasions.

called to its prior decision in Belkin v. Ray, 142 Tex. 71, 176 S.W.2d 162 (1943), particularly to this language: "As we have already shown, the legal effect of the two deeds here involved was to constitute this property the joint property of Harry and Ray Marks, and it was error to admit parol evidence to contradict the plain import and legal effect of such written instruments. * * * As already stated, here we have written deeds, which, to say the least, operated to convey this property to Harry Marks and Ray Marks so that each would own an undivided one-half interest therein; and we hold that such deeds cannot be contradicted so as to destroy this effect, without pleading and proof of fraud, accident, or mistake. No such pleading or proof is contained in this record."

Nevertheless, the Supreme Court refused the writ of error finding no reversible error. The holding of the Court of Civil Appeals on the point under discussion in Ottjes must have been approved or its judgment could not have been sustained.

There was no pleading of fraud or mistake in Ottjes and there is no such pleading in this case.

■ We feel bound by the Ottjes case and, therefore, hold that the testimony of Mr. Wallrath was admissible.

■ The parol evidence rule is not a rule of evidence but is a rule of substantive law. It should not be disregarded except for imperative reasons. From our review of the authorities on this point, we prefer adherence to the rule of law. See Connor v. Temm, 270 S.W.2d 541, St. Louis Court of Appeals, Mo. (1954).

Appellant asks that we reverse and render judgment for him.

■ Final judgment was rendered November 21, 1968. On November 27, 1968, appellant requested findings of fact and conclusions of law and this request was called to the attention of the trial judge on the same day. On December 17, 1968, the trial court made and filed findings of fact and conclusions of law. One finding of fact was, "That prior to the death of Virginia Wallrath, Maurice Wallrath had a conversation with her and told her he wanted her to be able to pay any personal obligations of his that might become due if and when he might become incapacitated because of illness." On December 19, 1968, appellant requested and called attention of the trial judge thereto, additional findings of fact. One of the findings requested was that the substance of the findings copied above occurred when the signature card was carried to Miss Wallrath for her signature, and that this was done at the suggestion of the Bank. This request for additional findings was refused on January 10, 1969.

These requests were made in compliance with Rules 296–298, T.R.C.P., and required notices were given.

The testimony of Mr. Wallrath concerning the purpose for which he and his sister signed the cards presented an issue of fact only.

We believe the trial court erred in not considering the requested finding. Wagner v. Riske, 142 Tex. 337, 178 S.W.2d 117 (1944). While some element of this finding may have been made, we cannot presume a finding of an omitted element except to support the judgment. Rule 299, T.R.C.P.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.