Emmett KENNEDY, Appellant,

v.

Willie Mae BEASLEY et al., Appellee.

No. 17533.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 24, 1980.

Rehearing Denied Sept. 4, 1980.

**2**

J. Leonard Gotsdiner, Houston, for appellants.

Lapin, Totz & Mayer, Larry L. Huelbig, Shelvin L. Hall and Gordon R. Cooper, II, Houston, for appellees.

Before EVANS, PEDEN and WARREN, JJ.

EVANS, Justice.

This is an appeal from an instructed verdict rendered in favor of the defendants at the close of the plaintiffs' case. The judgment will be affirmed in part and in part reversed and remanded.

The first question for this court's determination is whether it has jurisdiction over the appeal. The defendants have moved that the appeal be dismissed, asserting that the plaintiffs failed to timely file their appeal bond. (The term plaintiffs is used herein to include the original plaintiff and the intervening parties aligned with the plaintiff's interest).

The transcript shows that the trial court, after appropriate notice to both parties, signed a written order on December 21, 1978, setting the appeal bond at $9,000.00. Subsequently, on February 19, 1979, it entered a final judgment, taxing costs against the plaintiffs. On April 30, 1979, the plaintiffs' amended motion for a new trial was overruled by operation of law, and on May 9, 1979 the plaintiffs filed a $500.00 appeal bond. The last day for filing an appeal bond was May 30, 1979, and on June 8, 1979 the plaintiffs filed an "additional cost deposit" of $9,133.40.

The defendants contend that the plaintiffs' appeal bond was not timely filed because the bond was not in the amount specified by the trial court's order. In support of their position, the defendants rely upon *Fine v. Page*, 572 S.W.2d 577 (Tex.Civ. App. Eastland 1978, writ dism'd), wherein it is stated that in a case where the trial court specifies the amount of appeal bond the appeal is perfected when the appellant files the bond in accordance with the court's order.

Rule 430, Tex.R.Civ.P., provides that when there is a defect of substance or form in an appeal bond, the appellate court may allow the same to be amended by filing in such court a new bond on such terms as the court may prescribe. The Texas Supreme Court has held that this Rule is to be liberally construed, stating that if the appellant files "any sort of instrument that is intended to be a bond and to invoke appellate jurisdiction the instrument may, on timely request, be amended to cure any defect of either form or substance." *Woods Exploration and Production Company, Inc. v. Arkla Equipment Company*, 528 S.W.2d 568 (Tex. 1975).

It has been held that the timely filing of a $250.00 appeal bond where a $500.00 bond was required sufficiently invoked appellate jurisdiction and that the original bond could be amended to cure the defect. *Spears v. Brown*, 552 S.W.2d 560 (Tex.Civ.App. Dallas 1977, no writ). The

transcript contains a certificate from the County Clerk's office showing that the additional deposit was made in cash. The defendants' motion to dismiss the appeal is denied. Rule 354, Tex.R.Civ.P.

The plaintiffs' action is one for damages for the alleged conversion of certain assets of G.A. Kennedy, who died intestate on October 15, 1975. The principal plaintiff, Emmett Kennedy, a son of the decedent, brought this action against his sister Willie May Beasley and against defendants Riverside National Bank and its president, Dr. Carl Carroll, Jr., First City National Bank, Standard Savings and Loan Association and Gibraltar Savings Association. Gibraltar and First City were subsequently dismissed and Standard Savings failed to appear or answer. Dr. Carroll and Riverside National filed a bill of interpleader, praying for their attorneys' fees and costs. Other children of the decedent, G.A. Kennedy, intervened, and their interests are aligned with the original plaintiff. After granting the defendants' motion for instructed verdict, the trial court granted the bill of interpleader and upon the jury's verdict on that issue, ordered that attorneys' fees in the amount of $8,000.00 be deducted from the funds in the registry of the court and taxed such fees and court costs against the plaintiffs. From this judgment the plaintiffs appeal.

The plaintiff's petition alleged that the defendant, in conspiracy with the Riverside National Bank, fraudulently closed out and withdrew monies from certain savings accounts in the name of "G.A. Kennedy or Willie Mae Beasley" and that such conduct constituted a conversion of the funds. The petition specified three bank accounts at the Riverside National Bank and one each at First City National Bank, Gibraltar Savings Association and Standard Savings Association. The court's action with respect to the accounts at First City National Bank and Standard Savings Association has not been assigned as error, and it is, therefore, only necessary to discuss the three accounts at the Riverside National Bank and the one account at the Gibraltar Savings Association.

The checking account and the two savings accounts at the Riverside National Bank were "or" accounts authorizing either of the designated signatories to withdraw the funds on deposit. Some five days prior to G.A. Kennedy's death, Mrs. Beasley went to Riverside National Bank and caused all of the funds on deposit in those three accounts to be transferred to her own individual accounts. It is undisputed that the funds were monies initially owned by G.A. Kennedy, and it necessarily follows that he owned the funds at the time of his death unless he divested himself of ownership in some manner recognized in law.

■ Contrary to the defendants' contention, the signature cards on accounts in question do not conclusively establish, as between signing parties, a right of ownership to the deposited funds. It is true, as the defendants contend, that the cards stipulate that such deposited sums "shall be owned by the undersigned jointly and be subject to the withdrawal or receipt of (1) either of them, or (2) the survivor of them" and that "payment to or on the withdrawal of (1) either or (2) the survivor shall be valid and discharge that bank from liability." However, this language does not conclusively establish an agreement between the parties as to the ownership of the funds deposited. *Ottjes v. Littlejohn*, 285 S.W.2d 243, (Tex.Civ.App. Waco 1955, writ ref. n. r. e.).

Since the funds on deposit in the Riverside National Bank were withdrawn by Mrs. Beasley prior to the death of G.A. Kennedy, there is no question as to whether, upon the decedent's death, such funds became vested in Mrs. Beasley as a joint tenant. The only question is whether the judgment may be sustained on the basis of a conclusive showing of an *inter vivos* gift from the decedent to that defendant.

■ The opening of an "or" account does not of itself constitute a gift of the funds by one of the depositing parties to the other. *Carnes v. Meador*, 533 S.W.2d 365 (Tex. Civ.App. Dallas 1975, writ ref. n. r. e.).

In order for there to be a valid *inter vivos* gift it must be shown that the donor clearly intended to make such gift, and that there was a present delivery of the property of such a character as to divest the donor of the title, dominion, and control over it. *Giles v. Giles*, 94 S.W.2d 208, 210 (Tex.Civ. App.–Austin 1936, writ dism'd).

> "The controlling question in determining whether there has been a gift of a joint interest in a bank account is always the donor's true intent; and likewise a joint tenancy or a joint ownership of a deposit is created only when it clearly appears to have been a divesting by the original owner of the exclusive ownership and control of the money and a vesting of such ownership and control jointly in himself and another, with the attendant right of survivorship.
>
> . . . to sustain a gift of a joint interest in a bank account two requisites are necessary: 1) Intention by the depositor to make a gift of a joint interest in the deposit to the co–depositor. 2) Divesting by the depositor of exclusive dominion and control over the money, and a vesting of such dominion and control jointly in himself and another." *Ottjes v. Littlejohn*, supra, at page 245-6.

In a case where an instructed verdict has been rendered, it is the task of the reviewing court to determine whether the record contains any evidence of probative force raising fact issues on material questions presented, and the court must consider all of the evidence in a light most favorable to the party against whom the instructed verdict was rendered and discard all contrary evidence and inferences. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649 (Tex. 1976).

Although Mrs. Beasley testified that the funds in question were a gift from her father to her, she did not detail any circumstances in support of this conclusion. She also testified that her father's stated reason for directing her to transfer the funds to her account was so that she could continue in a position on the advisory council to the Riverside National Bank, since he was infirm and could not continue to serve in that capacity. She further admitted, on cross–examination, that his stated intent in directing such transfer of funds was not to deprive the other children of their right to share in his estate.

There was no other testimony presented with respect to the issue of an *inter vivos* gift, and under the state of the evidence, the trier of fact was not bound to accept Mrs. Beasley's testimony as conclusive on the question of whether a gift was intended. The appellant's first five points of error are sustained as to defendant Willie Mae Beasley. Since there is no evidence in the record indicating that the Riverside National Bank or its president, Dr. Carroll, committed any of the alleged acts which would render it legally responsible in the plaintiffs' action for conversion, the points will be overruled as to such defendants.

In view of the disposition of these points it is unnecessary to consider the plaintiffs' points of error six, seven and eight.

In their ninth point of error the plaintiffs contend, in effect, that the Gibraltar Savings Association account was conclusively established as a joint tenancy with right of survivorship. The record shows that the funds on deposit in the Gibraltar Savings account were not withdrawn prior to the decedent's death, and therefore it will be assumed that such funds remained on deposit in that account at the time of the decedent's death. The Gibraltar Savings Association account card indicates that the parties agreed to hold such deposits as "joint tenants with right of survivorship and not as tenants in common." In the absence of clear evidence showing a contrary intent, it must be presumed that the deceased depositor intended to vest complete ownership rights in the survivor; *Krueger v. Williams*, 163 Tex. 545, 359 S.W.2d 48 (1962); *Davis v. East Texas Savings & Loan Association*, 163 Tex. 361, 354 S.W.2d 926 (1962); *Quilter v. Wendland*, 403 S.W.2d 335 (Tex. 1966). This point of error is overruled.

The plaintiffs' tenth point of error does not state any basis for this court's review.

The trial court's judgment is affirmed as to all parties and in every respect except only with respect to the cause of action asserted by plaintiff Emmett Kennedy and the intervenors, Connie Kennedy and Ella Alford, against defendant Willie Mae Beasley for the alleged conversion of the three accounts in the Riverside National Bank, and said cause of action as to said parties only is hereby ordered severed, and the trial court's judgment with respect to such severed action is reversed and the cause is remanded for further proceedings.

Costs of appeal are taxed one-half against the plaintiffs and one-half against defendant Willie Mae Beasley.