Mary K. STAUFFER, Petitioner,

v.

J.D. HENDERSON, Respondent.

No. C–7480.

Supreme Court of Texas.

Dec. 31, 1990.

Rehearing Overruled Jan. 30, 1991.

William L. Rivers, Austin, for petitioner.

Mitchell G. Ehrlich, Perryton, John M. Brown, Amarillo, for respondent.

## OPINION

HECHT, Justice.

We consider here whether funds in a joint account belong to the survivor of the account parties. The trial court held as a matter of law that the survivor is not entitled to the funds. The court of appeals affirmed. 746 S.W.2d 533. We affirm the judgment of the court of appeals.

### I

Marian K. Henderson opened a joint bank account with her sister, Mary K. Stauffer. All funds deposited to the account belonged to Marian. The only written agreement between Marian and Mary pertaining to the joint account was contained on the signature card provided by the depository and signed by both Marian and Mary. That agreement stated in pertinent part:

### JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR

... We agree and declare that all funds now or hereafter deposited in this account are and shall be our joint property, that either of us shall have power to act in all matters relating to such account, whether the other be living or dead, and that upon the death of either of us any balance in said account or any part thereof may be withdrawn by, or upon the order of the survivor. It is especially agreed that withdrawal of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.... [The depository] is hereby authorized to act without further inquiry in accordance with writings bearing any [signature of Marian or Mary], and any such payment or delivery or a receipt or acquittance signed by [Marian or Mary] shall be a valid and sufficient release and discharge of [the depository].

When Marian died, Mary withdrew the funds. Marian's husband, J.D. Henderson, the independent executor of her estate, then sued Mary to recover the funds, claiming that they were his and Marian's community property and that consequently half belonged to him individually and half belonged to Marian's estate. Mary answered, contending that she was entitled to the funds by right of survivorship created by her agreement with Marian contained in the signature card quoted above. J.D. and Mary both moved for partial summary judgment based entirely upon the language of the signature card. The trial court granted J.D.'s motion, holding that Mary was not entitled to the funds. The trial court severed this judgment from the remaining issues in the case.[1]

### II

#### A

*Jus accrescendi*, the right of survivorship, was the "grand incident" of a joint estate held, in the ancient language of the common law, "per my et per tout". 2 W. BLACKSTONE, COMMENTARIES *183; C. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL

---

1. Those issues are whether the money deposited by Marian was separate or community property, whether Mary is liable for conversion of the funds, and whether Mary is liable for attorney fees.

PROPERTY 210–211 (2d ed. 1988); Niles & Walsh, *Concurrent Estates and Their Characteristics*, in 2 AMERICAN LAW OF PROPERTY 3–11, 16–18 (J. Casner ed. 1952); J. SCHOULER, TREATISE ON THE LAW OF PERSONAL PROPERTY § 156, at 224–226 (5th ed. 1918); J. WILLIAMS, PRINCIPLES OF THE LAW OF PERSONAL PROPERTY 518–522 (1926). The right of survivorship as an essential legal incident of joint ownership has not been favored in this country, however, and consequently has been abolished in most American jurisdictions. *See* MOYNIHAN, *supra*, at 211; Niles & Walsh, *supra*, at 11–15; 20 AM.JUR.2D *Cotenancy and Joint Ownership* § 11 (1965); 48A C.J.S. *Joint Tenancy* § 5 (1981). The Second Legislature of Texas did so in 1848 by the following statute:

> When two or more persons hold an estate, real, personal or mixed jointly, and one joint tenant dies before severance, his interest in said joint estate shall not survive to the remaining joint tenant or joint tenants, but shall descend to and be vested in the heirs or legal representatives of such deceased joint tenant, in the same manner as if his interest had been severed and ascertained.

Law of March 18, 1848, ch. 103, § 12, 1848 Tex.Gen.Laws 129, 132, 3 H. GAMMEL, LAWS OF TEXAS 129, 132 (1898).

Elimination of the right of survivorship as a necessary, legally imposed element of joint estates does not prohibit joint owners from agreeing that each will take the other's interest in the property at the other's death. Although the 1848 statute quoted above does not expressly allow joint owners to agree to a right of survivorship, it also does not prevent them "from providing among themselves that the property in question should pass to and vest in the

survivor as at common law." *Chandler v. Kountze*, 130 S.W.2d 327, 329 (Tex.Civ. App.—Galveston 1939, writ ref'd); *see Adams v. Jones*, 258 S.W.2d 401 (Tex.Civ. App.—Austin 1953, no writ); *Shroff v. Deaton*, 220 S.W.2d 489 (Tex.Civ.App.— Texarkana 1949, no writ). The power of joint owners to agree to a right of survivorship, implicit in the 1848 statute, was made explicit when that statute was moved to section 46 of the new Probate Code adopted in 1955, and amended to provide as follows:

> Where two or more persons hold an estate, real, personal, or mixed, jointly, and one joint owner dies before severance, his interest in said joint estate shall not survive to the remaining joint owner or joint owners, but shall descend to, and be vested in, the heirs or legal representatives of such deceased joint owner in the same manner as if his interest had been severed and ascertained. Provided, however, that by agreement in writing of joint owners of property, the interest of any joint owner who dies may be made to survive to the surviving joint owner or joint owners, but no such agreement shall be inferred from the mere fact that the property is held in joint ownership.

Law of Sept. 1, 1956, ch. 55, § 46, 1955 Tex.Gen.Laws 88, 103. Although the language of section 46 has been amended several times since it was adopted in 1955, its essential provisions have continued in effect to the present.[2]

### B

There has been little doubt before or after the adoption of section 46 that the parties to a joint account at a bank or other depository may, absent fraud or other illegal purpose, make a valid and enforceable written agreement that funds deposit-

---

**2.** Now section 46(a) of the Texas Probate Code, the provision states:

> If two or more persons hold an interest in property jointly, and one owner dies before severance, the interest of the decedent in the joint estate shall not survive to the remaining joint owner or owners but shall pass by will or intestacy from the decedent as if the dece-

dent's interest had been severed. The joint owners may agree in writing, however, that the interest of any joint owner who dies shall survive to the surviving joint owner or owners, but no such agreement shall be inferred from the mere fact that the property is held in joint ownership.

ed by either of them will belong to the survivor. *See Davis v. East Texas Sav. & Loan Ass'n,* 163 Tex. 361, 354 S.W.2d 926, 929–931 (1962); *Johnson v. Johnson,* 306 S.W.2d 780, 781–783 (Tex.Civ.App.—Amarillo 1957, writ ref'd); *Brown v. Lane,* 383 S.W.2d 649, 650–651 (Tex.Civ.App.—Dallas 1964, writ ref'd). There has been considerable confusion, however, over the effect of particular agreements.

■ This confusion is due in part to the very different reasons parties have for opening joint accounts. It is not at all unusual for a person to deposit his or her funds into an account upon which another person is authorized to draw merely for the convenience of the depositor. The owner of the money intends only to facilitate disbursement of the funds for his or her own purposes, not to transfer title to the co-signator on the account. It is no less common for a depositor of funds into a joint account to intend that at some point in time, at the depositor's death if not before, those funds will become the property of the co-signator. Thus, both common experience, as well as the express language of section 46, prohibit an inference from the mere creation of a joint account that the parties intend for ownership of the funds to pass automatically upon the death of one of them.

■ Frequently, the only written agreement of the parties which might reflect their intent is the signature card or similar form provided by the depository and signed when the account is opened. The principal purpose of such forms, however, is to authorize the depository to pay funds in the account upon the direction of any party,[3] not to establish ownership of the funds as between the parties upon the death of one of them. *See Reed v. Reed,* 283 S.W.2d 311, 316 (Tex.Civ.App.—Dallas 1955, no writ). A joint account agreement which authorizes funds to be paid to or with-

drawn by one party allows the party to insist that the depository honor a request for payment but does not establish the right of that party to the funds against other claimants. Thus, the account agreement provided by the depository and signed by the parties ordinarily authorizes delivery of the funds to any party to a joint account but may or may not settle the issue of actual ownership of the funds.

Construction of joint account agreements has been further complicated by uncertainty over the proper legal theory to be used to determine a survivor's right to account funds. A written agreement under section 46 has not been viewed as the exclusive means of transferring ownership of funds to surviving parties on joint accounts. In analyzing the right to funds in a joint account, courts have considered the surviving party as a donee, *see, e.g., Ottjes v. Littlejohn,* 285 S.W.2d 243, 245–246 (Tex.Civ. App.—Waco 1955, writ ref'd n.r.e.); *Adams v. Jones,* 258 S.W.2d at 403; as a third party beneficiary of the contract between the decedent and the depository, *see, e.g., Quilter v. Wendland,* 403 S.W.2d 335, 336–338 (Tex.1966); and as a trust beneficiary, *see, e.g., Adams,* 258 S.W.2d at 403. In considering whether a right of survivorship may be created apart from the written agreement of joint owners, the courts have, not surprisingly, looked beyond any account agreement to parol evidence of the parties' intent.

Thus, in *Krueger v. Williams,* 163 Tex. 545, 359 S.W.2d 48 (1962), the Court did not consider the language of the joint account receipt card provided by the bank and signed by the decedent to be dispositive of the survivor's right to the funds. The card stated only that the funds were "payable to the survivor of either" party and did not evince a clear intention to vest ownership of the funds, as opposed to mere possession, in the survivor. Nevertheless, the

---

**3.** Depositories obtain such agreements from joint account parties out of what appears to be an abundance of caution, as payment to or on order of a joint account party is protected by statute. *See* TEX.REV.CIV.STAT.ANN. art. 342–706

(Vernon 1973) (banks); TEX.REV.CIV.STAT.ANN. art. 852a, § 6.08 (Vernon Supp.1990) (savings and loan associations); TEX.PROB.CODE ANN. §§ 445, 448 (Vernon 1980, Supp.1990).

Court held that the survivor's right of control over the funds before the decedent's death and her right to possession of the funds afterward created a presumption that the decedent intended her to have the funds at his death, and that the burden of proof was on the adverse claimant to demonstrate a contrary intent. *Krueger* did not apply section 46 because there was no written agreement signed by both the decedent and the survivor.[4]

By holding that contract language which did not create a right of survivorship might nevertheless give rise to a rebuttable presumption that one was intended, *Krueger* authorized consideration of evidence extrinsic to an agreement pertaining to the joint account, at least in instances when the agreement used the word "survivor". *See Quilter*, 403 S.W.2d at 337–338. Absent some written reference to "survivor", the Court held in *Forehand v. Light*, 452 S.W.2d 709 (Tex.1970), that no presumption was invoked and suggested that a right of survivorship could not be established, even by extrinsic evidence of intent. If, on the other hand, a right of survivorship was clearly created by the language of a joint account signature card signed by both parties, the Court held in *Dulak v. Dulak*, 513 S.W.2d 205 (Tex.1974), that the right could nevertheless be defeated by parol evidence of contrary intent. The courts of appeals after *Krueger* did not always draw these rather close distinctions, uniformly acknowledging simply that extrinsic evidence was admissible in every case on the issue of intent to create a right of survivorship. *See William Marsh Rice University v. Birdwell*, 624 S.W.2d 661 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Kennedy v. Beasley*, 606 S.W.2d 1 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Alexander v. Bowens*, 595 S.W.2d 176 (Tex. Civ.App.—Tyler 1980, no writ); *Griffin v. Robertson*, 592 S.W.2d 31 (Tex.Civ.App.—Texarkana 1979); *Cooper v. Durham*, 565 S.W.2d 308 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); *Worden v. Thornburg*, 564 S.W.2d 480 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Henry v. Powers*, 447 S.W.2d 738 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ); *Estate of Reynolds v. Reynolds*, 443 S.W.2d 601 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.); *Wallrath v. Calvert*, 442 S.W.2d 884 (Tex.Civ.App.—Austin 1969), modified and affirmed, 457 S.W.2d 376 (Tex.1970); *Turner v. Merchants & Planters Nat'l Bank*, 392 S.W.2d 889 (Tex.Civ.App.—Texarkana 1965, no writ); *Groos Nat'l Bank v. Norris*, 384 S.W.2d 401 (Tex.Civ.App.—Eastland 1964, no writ). The results in these cases are difficult to reconcile and appear to have been heavily affected by the particular circumstances of each.

### C

■ In 1979, the Legislature added to the Probate Code chapter XI entitled "Nontestamentary Transfers". Included in this chapter is section 439, entitled "Right of Survivorship". Section 439(a), which applies to joint accounts, states in part:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. A survivorship agreement will not be inferred from the mere fact that the account is a joint account.

Law of Aug. 27, 1979, ch. 713, § 31, 1979 Tex.Gen.Laws 1740, 1758. Besides applying section 46 specifically to joint accounts, section 439 is significant in two respects.

First, section 439 provides the exclusive means for creating a right of survivorship in joint accounts. In addition to simple

---

**4.** Subsequent opinions suggest that our holding in *Williams* was limited to the facts of that case. *Forehand v. Light*, 452 S.W.2d 709, 710 (Tex. 1970) ("The word 'survivor' was vital to our decision in *Krueger*."); *Quilter v. Wendland*, 403 S.W.2d 335, 339 (Tex.1966) (Smith, J., dissenting) ("The result in the *Krueger* case was reached because of its particular facts.").

joint accounts treated in section 439(a), it applies to P.O.D. (payable on death) accounts (section 439(b)) and trust accounts (section 439(c)). Section 439(d) states: "In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of his estate." Section 441 adds: "Transfers resulting from the application of Section 439 of this code are effective by reason of the account contracts involved and this statute and are not to be considered as testamentary or subject to the testamentary provisions of this code." We conclude that the Legislature has replaced the various legal theories which have been used to determine the existence of a right of survivorship in a joint account with section 439.

Second, the necessity of a written agreement signed by the decedent to create a right of survivorship in a joint account is emphatic. Section 439, like the other provisions of chapter XI adopted in 1979, is derived from article VI, part 1 of the Uniform Probate Code. The uniform provision which corresponds to the two sentences of section 439(a) quoted above is the following single sentence:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent *unless there is clear and convincing evidence of a different intention at the time the account is created.*

UNIF.PROB.CODE § 6–104(a), 8 U.L.A. 562 (1983) (emphasis added.) "Clear and convincing evidence" is a standard used consistently in the provisions of article VI, part 1 of the Uniform Probate Code. *See* UNIF.PROB.CODE §§ 6–103(a), 6–103(c), 6–104(a), 6–104(c), 8 U.L.A. 520–'533. In adopting these provisions into the Probate Code, the Legislature used this same standard in each, except for section 439(a). *See* TEX.PROB.CODE ANN. §§ 438(a), 438(c), 439(c) (Vernon 1980). For proving a right of survivorship in a joint account, however, the Legislature has determined that clear and convincing evidence is not enough, and that a written agreement signed by the decedent is required.

These conclusions are consistent with the 1987 amendments to section 439(a), which added the following sentence:

> Notwithstanding any other law, an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account under this subsection if the agreement states in substantially the following form: "On the death of one party to a joint account, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate."

Not only has the Legislature made a written agreement both necessary and sufficient for a right of survivorship in a joint account, it has undertaken to specify language that will meet its requirements.[5]

### D

■ Section 439(a) makes a written agreement determinative of the existence of a right of survivorship in a joint account. If such agreement is complete and unambiguous, then parol evidence is inadmissible, as with written agreements generally, to vary, add to or contradict its terms. *See Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958). Furthermore, no presumption can be created to contradict the agreement or to supply a term wholly missing from its provisions. Any such presumption would violate both the parol evidence rule by necessitating admission of extrinsic evidence to rebut the presumption, and the express prohibition of section 439(a) against inferring a right of survivorship from the mere creation of a

---

5. Of course, in addition to this legislatively drafted "safe harbor," banks may also ask in plain language, on their applications, signature cards, or other documentation for joint accounts, whether or not their customers intend ownership of the funds remaining in the account on the death of one joint account holder to go to the surviving joint account holders.

joint account. Thus, if the terms of an agreement pertaining to a joint account are clear, the parties may not introduce extrinsic evidence of the parties' intent. Section 439(a) effectively overrules prior case law to the contrary.

The courts of appeals which have considered section 439(a) have generally agreed that extrinsic evidence of the intent of parties to a joint account is inadmissible to show a right of survivorship. In *Sheffield v. Estate of Dozier*, 643 S.W.2d 197 (Tex.App.—El Paso 1982, writ ref'd n.r.e.), the court held that parol evidence was inadmissible to defeat a right of survivorship clearly created by the account card signed by the parties. Observing that prior to section 439(a) "the courts of this State had consistently held that parol evidence was admissible to determine the intention of the depositor in setting up a joint survivorship account, even though such evidence contradicted the express terms of the joint account agreement", the court concluded that "[t]here can be no question that the legislature intended to change the Texas rule when it enacted the new chapter on 'Nontestamentary Transfers.' " *Id.* at 198. Similarly, in *Magee v. Westmoreland*, 693 S.W.2d 612 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.), the court held that a certificate of deposit which was "payable to survivor" was insufficient to create a right of survivorship. Absent any other agreement signed by the depositor, the court concluded that the survivor was not entitled to the funds. Referring to section 439, the court stated:

> The unequivocal phraseology of the language in the Code and the requirements of an agreement in writing by joint owners of an account including a certificate of deposit prevent a court from scrutinizing the circumstances surrounding the establishment of such multiple-party accounts and declaring the existence of a contract for the benefit of the third party or the intent of the decedent. In the absence of the mandated agreement in writing, the interest of a joint owner who dies before severance shall not survive to the remaining joint owner but shall descend to and is vested in his heirs or legal representatives.

*Id.* at 616. Again, in *Chopin v. InterFirst Bank Dallas*, 694 S.W.2d 79 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), the court held that absent an agreement creating a right of survivorship, none could be established by extrinsic evidence. After noting the enactment of chapter XI of the Probate Code, the court stated:

> The Code provisions were adopted for the purpose, among others, of removing the confusion and uncertainty created by the then prevailing case law which had consistently held that parol evidence was admissible to determine the intent of the depositor in setting up a joint account....
>
> ... The intent of the decedent must ... be determined from the agreement, and extrinsic evidence may not be offered to prove intent.... Finally, by the terms of the agreement the account must be "made to survive" to the remaining party.

*Id.* at 84. Citing *Chopin*, the court in *Dickerson v. Brooks*, 727 S.W.2d 652 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), upheld a right of survivorship created by the plain language of the account agreement, stating:

> In order for an account to comply with the requirements of section 439(a), there must be a written agreement signed by the decedent, and the agreement must provide that upon the death of any party, the interest of the deceased survives to the other party.... Language to the effect that 'the account is held as joint tenants with rights of survivorship' is sufficient to create a valid survivorship agreement.

*Id.* at 653. *See also McCarty v. First State Bank & Trust Co.*, 723 S.W.2d 792 (Tex.App.—Texarkana), *rev'd on other grounds*, 730 S.W.2d 656 (Tex.1987) (per

curiam); [6] *Isbell v. Williams*, 705 S.W.2d 252 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), appeal after remand, 738 S.W.2d 20 (Tex.App—Texarkana 1987, writ ref'd n.r. e.); *Otto v. Klement*, 656 S.W.2d 678 (Tex. App.—Amarillo 1983, writ ref'd n.r.e.).[7]

In *Sawyer v. Lancaster*, 719 S.W.2d 346 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), the court considered an account signature card which authorized payment to the surviving party but did not create a right of survivorship. The court observed: "Since the enactment of 439(a), every Texas case has held that evidence of the deceased person's intent is not admissible to alter a survivorship agreement." *Id.* at 349. However, the court held, relying on *Krueger*, that section 439(a) did not prohibit a rebuttable presumption that the depositor intended to create a right of survivorship even though the language of the signature card did not express that intent. In this regard, *Sawyer* conflicts with the result in *Chopin*. As we have noted above,

a presumption regarding a joint account party's intent to create a right of survivorship is inconsistent with the necessity of a written agreement required by section 439(a). We therefore disapprove *Sawyer* to the extent it is inconsistent with this opinion.[8]

We agree with the courts of appeals which have held that section 439(a) allows neither extrinsic evidence nor a rebuttable presumption to create a right of survivorship which is not established by a written agreement signed by the deceased joint account party.

### III

■ The account which Marian Henderson opened with Mary Stauffer is a joint account. The only written agreement pertaining to that account is the signature card, which is quoted above. That card authorizes payment of funds to the survivor at the other party's death but does not

6. The account agreement in *McCarty* did not create a right of survivorship. The surviving party attempted to establish his right to the funds by offering an affidavit of two witnesses averring that the deceased depositor intended the survivor to have the funds at her death. Somewhat peculiarly, the depositor had signed the affidavit before her death but did not swear to the statement made by the witnesses. The court correctly held that "[t]he mere intention of a depositor as to use or ownership of the funds upon his death cannot be considered in determining the disposition of those funds." 723 S.W.2d at 794. The court incorrectly added, however: "Only the language of the contract with the bank may be considered." *Id.* Any agreement signed by the depositor may be considered under section 439(a).

The devisees under the decedent's will sued the bank to recover the funds it paid to the survivor on the account. The bank claimed against the survivor for indemnity. The trial court held that the survivor was entitled to the funds and therefore rendered judgment for the bank. The court of appeals reversed, holding that the devisees were entitled to the funds, but did not remand the case for further proceedings on the banks claim of indemnity. This Court reversed the court of appeals' judgment and remanded the bank's claim to the trial court. On the survivor's application for writ error challenging the appeals court's holding as to ownership of funds, however, this Court denied the application with the notation, no reversible error.

7. *Otto* involved three separate accounts: a savings account, a checking account and a certificate of deposit. The court correctly held that the savings account agreement expressly created a right of survivorship. The checking account was "designated" a joint survivorship account by the depositor, but the account agreement itself only permitted payment to the survivor and did not clearly create a right of survivorship. It is therefore unclear from the facts recited in *Otto* whether its holding that there was a right of survivorship in the checking account was correct. There was no agreement signed by the depositor as to the certificate of deposit, and the court appears to have held that parol evidence was admissible to determine whether the certificate of deposit was a trust account of which the surviving party listed on the certificate was the beneficiary. *See* Tex.Prob.Code Ann. § 439(c) (Vernon 1980).

8. It is interesting to note that the same court of appeals which decided *Sawyer* also decided *Dickerson*, and the author of the opinion in the latter case joined in the opinion in *Sawyer*. However, the court in *Dickerson* relies upon *Chopin*, the opinion of another court of appeals which *Sawyer* criticizes, and does not cite its own prior opinion in *Sawyer*.

create a right of survivorship. We therefore hold under section 439(a) of the Probate Code that no right of survivorship in the account exists. Both courts below correctly held as a matter of law that Mary was not entitled to the funds in the account. The judgment of the court of appeals is accordingly affirmed.

RAY, Justice, dissenting.

I respectfully dissent. The court's holding construing section 439(a) of the Probate Code to require more than "payable to the survivor" or similar language for the funds to be presumptively vested in the survivor is contrary to legislative intent, produces a result inconsistent with the prior actions of this court, and elevates "magic words" over the common sense approach previously used to protect depositors' intentions from legalisms. I would reverse the judgments of the trial court and court of appeals and render judgment for Mary K. Stauffer.

### Legislative Intent for "Makes To Survive"

The majority opinion makes no reference to the legislative history of the 1979 amendments, as though the legislature gave no guidance on what the words of the statute mean. That is not the case. The legislative history states the 1979 amendments were to be a "codification of current law" to be enacted "without changing current Texas Law ... both case law and statute."[1] The majority does not address this legislative history because it cannot reconcile this express legislative intent with the majority's conclusion that the statute "overruled" *Krueger v. Williams*, 163 Tex. 545, 359 S.W.2d 48 (1962). Before addressing the legislative intent in detail, however, it is helpful to clarify what is *not* in issue in this case, because the majority opinion has muddled its analysis with irrelevant matters to avoid reaching the real issue.

First, the construction or application of section 46 of the Probate Code is not at issue. Section 46 and its statutory predecessors have been in effect in substantially the same form since 1848. Its construction is well established by longstanding and unquestioned precedent. At common law, property could be held jointly *only if* it passed to the survivor upon death. The strong language of section 46 was meant to overrule that common law requirement, to permit joint ownership *without* survivorship, not to impede or prevent the creation of joint tenancies *with* rights of survivorship. Although the statute provides that when property is held in joint tenancy, "and one joint tenant dies before severance, his interest in said joint estate shall not survive to the remaining joint tenant or tenants, but shall descend to and be vested in" his heirs,[2] the statute did not prevent the joint tenants from providing by agree-

---

1. *Interim Study Report on Nontestamentary Transfers presented to House Judiciary Committee: Recommendation #36,* 66th Leg., Reg.Sess. (1979).

2. Now codified as Tex.Prob.Code Ann. § 46(a) (Vernon Supp.1990). As effective when the signature card was signed, the statute read as follows:

Where two (2) or more persons hold an estate, real, personal, or mixed, jointly, and one (1) joint owner dies before severance, his interest in said joint estate shall not survive to the remaining joint owner or joint owners, but shall descend to, and be vested in, the heirs or legal representatives of such deceased joint owner in the same manner as if his interest had been severed and ascertained. Provided, however, that by an agreement in writing of joint owners of property the inter-

est of any joint owner who dies may be made to survive to the surviving joint owner or joint owners, but no such agreement shall be inferred from the mere fact that the property is held in joint ownership.

Tex.Prob.Code Ann. § 46 (Vernon 1980).

Through amendments in 1987 and 1981, the legislature brought the statute to its present language:

(a) If two or more persons hold an interest in property jointly, and one joint owner dies before severance, the interest of the decedent in the joint estate shall not survive to the remaining joint owner or owners but shall pass by will or intestacy from the decedent as if the decedent's interest had been severed. The joint owners may agree in writing, however, that the interest of any joint owner who dies shall survive to the surviving joint owner or owners, but no such agreement shall be

ment that the property would pass to and vest in the survivor. *Chandler v. Kountze*, 130 S.W.2d 327, 329 (Tex.Civ. App.—Galveston 1939, writ ref'd). This construction of section 46, including expressly the "may be made to survive to the surviving joint owner" language, was well established when this court issued its opinions in *Davis v. East Texas Savings and Loan Ass'n*, 163 Tex. 361, 354 S.W.2d 926 (1962), and *Krueger v. Williams*, 163 Tex. 545, 359 S.W.2d 48 (1962), holding account signature cards with far weaker language than the one at issue here, *were* effective to make to survive to the surviving joint owner the interest of the decedent. Further, since the legislature expressed its intent of no change from the existing Texas law in enacting section 439(a) and its related new provisions, the new provisions did not alter the established meaning of section 46. Except for the established meaning of the "may make to survive" language from those cases, section 46 simply is not relevant to the present case. To the extent the similar language is relevant, however, the established construction is *contrary* to the result reached by the majority.

Second, whether *Dulak* is valid after the 1979 amendments, is not at issue here. Before the 1979 amendments, this court had recognized that a "convenience account" could be proved by extrinsic evidence contradicting the express terms of the written account card. When the terms of the writing clearly stated a joint account with right of survivorship was created, parol evidence was nevertheless admissible to show that the depositor intended that the account be for convenience purposes only, in which case the funds would pass to the decedent's heirs or devisees. *Dulak v. Dulak*, 513 S.W.2d 205, 208 (Tex.1974) (recognizing so-called "convenience accounts" contradicting the written account card).

Whether the 1979 amendments overruled *Dulak* does not control this case. As

adopted effective August 27, 1979 and applicable at all relevant times to this case, sections 439(a) and 441 of the Texas Probate Code provided:

§ 439(a):

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent *if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties. A survivorship agreement shall not be inferred from the mere fact that the account is a joint account.* If there are two or more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous ownership interests under Section 438 of this code augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before his death, and the right of survivorship continues between the surviving parties if a written agreement signed by a party who dies so provides. (Emphasis supplied.)

§ 441:

Transfers resulting from the application of Section 439 of this code are effective by reason of the account contracts involved and this statute and are not to be considered as testamentary or subject to the testamentary provisions of this code.

Tex.Prob.Code Ann. §§ 439(a), 441 (Vernon 1980).

The legislature further added subsection (d), which provides in effect that joint accounts not meeting the written agreement standard and not falling within one of the other statutory exceptions [3] are ineffective as non-probate transfers. Subsection (d) states:

In other cases, the death of any party to a multiple-party account has no effect on

---

inferred from the mere fact that the property is held in joint ownership.

(b) Subsection (a) does not apply to agreements between spouses regarding their community property. Agreements between spous-

es regarding rights of survivorship in community property are governed by Part 3 of Chapter XI of this code.

3. The other exceptions—subsection (b), P.O.D. accounts, and subsection (c), trust accounts—

beneficial ownership of the account other than to transfer the rights of the decedent as part of his estate.

Tex.Prob.Code Ann. § 439(d) (Vernon 1980).

It is a well-established principle of Texas law that when a statute is clear and unambiguous, and reasonably admits of only one construction, the courts will take the legislative intent from the words of the statute and apply that intent as written. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983); *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex.1974). When the statute's meaning is plain, this court will not explore its legislative history to contradict its express terms. *Railroad Commission v. Miller*, 434 S.W.2d 670, 672 (Tex.1968); *City of Port Arthur v. Tillman*, 398 S.W.2d 750, 752 (Tex.1965). In subsection (a), the legislature provided that sums remaining on deposit are property of the survivor "if by a *written agreement* * * * [such interest] is *made to survive* to the surviving party" (emphasis supplied). In subsection (d) the legislature stated that in all other cases the interest passes as a probate asset. There is no ambiguity in this language as to the significance of a

written agreement expressly and clearly granting survivorship rights. The statute plainly states that an unambiguous writing has controlling effect. When a written agreement's express words clearly and unambiguously provide that the sums in an account are to pass to the surviving joint tenant, i.e., that there are survivorship rights, the writing must be enforced. Notwithstanding the intent not to change Texas law, the legislature's express words have effectively overruled *Dulak*. There are no more "convenience accounts" when the writing clearly provides for survivorship rights. Parol evidence is no longer admissible to *contradict* the express terms of the writing. This court had already confirmed that result by refusing, "no reversible error," several courts of appeals decisions[4] reaching that conclusion, and presenting the issue for review by this court, while we were still an "error correcting" court.[5]

That the legislature intentionally or unintentionally has overruled *Dulak* does *not* mean that we should ignore legislative intent as shown by the legislative history to determine what language is sufficient under the "make to survive" words of the

---

both are not relevant here. Tex.Prob.Code Ann. § 439(b), (c) (Vernon 1980).

**4.** *Dickerson v. Brooks,* 727 S.W.2d 652 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Otto v. Klement,* 656 S.W.2d 678 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.).

**5.** We also implicitly affirmed that result in our review of *McCarty v. First State Bank & Trust Co.,* 723 S.W.2d 792 (Tex.App.—Texarkana), *rev'd as to other parties on other grounds,* 730 S.W.2d 656 (Tex.1987). This court could not reach the issue in what was apparently the first decision reaching that conclusion, *Sheffield v. Estate of Dozier,* 643 S.W.2d 197 (Tex.App.—El Paso 1982, writ ref'd n.r.e.), because the petitioner before this court had not preserved the point by raising it on motion for rehearing before the court of appeals.

The majority opinion's citation of *Magee v. Westmoreland,* 693 S.W.2d 612 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.), misses or obscures the point of the opinion. *See majority opinion,* at 864. In *Magee,* there was no account card or other writing *signed by the decedent* with the "payable to the survivor" language;

rather, that language appeared in the certificate of deposit issued by the financial institution. Indeed, Finding of Fact No. 3 quoted in the court of appeals opinion was: "No written agreement was ever signed by Mary Louise Haag [decedent] stating the interest of Mary Louise Haag in Certificate of Deposit No. 14631 would on her death survive to Sam D. Magee." 693 S.W.2d at 614. Further, the express holding was that there was no writing signed by the decedent. 693 S.W.2d at 616. The case does *not* hold that the language "payable to the survivor," had such been signed by the decedent, would have been insufficient to create survivorship rights. Likewise, the majority's attempt to approve one holding of *Otto v. Klement,* 656 S.W.2d 678 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.), while questioning another holding ("unclear ... whether it holding that there was a right of survivorship in the checking account was correct," majority opinion *ante,* at 865 n. 6), results from a refusal to distinguish between *contradicting* an express survivorship agreement and accepting the holding that "payable to the survivor" was sufficient language (absent contradictory extrinsic evidence) to create survivorship rights.

statute for the writing to create, prima facie or presumptively, the right of survivorship. The issue is what the statute means by "is made to survive to the surviving party or parties." A term which is not expressly defined in a statute, such as what it means to make to survive to the surviving party the interest in the account, is not so clear and unambiguous that there is no room for statutory interpretation. In the Code Construction Act, the legislature has directed the courts in "interpreting a statute" to "diligently attempt to ascertain the legislative intent." TEX.GOV'T CODE ANN. § 312.005 (Vernon 1988). To construe such terms, this court may properly look to the legislative history as a key factor to determine legislative intent. *Seay v. Hall,* 677 S.W.2d 19, 22–23 (Tex.1984).

The legislative intent was to leave Texas law on what "makes to survive" means unchanged, including case decisions under the common law. When the legislature enacted section 439(a) of the Probate Code, it was as part of a completely new chapter of the code. The House Judiciary Committee which drafted the statute issued an Interim Study Report. The Report states that in submitting the bill the Committee recommended that

> codification of current law be made along the general structural lines of the Uniform Probate Code, Article 6, without changing current Texas Law and adopting the Uniform Probate Code provisions only where they do not conflict with Texas law—both case law and statute—or where Texas law is silent.

*Interim Study Report on Nontestamentary Transfers presented to House Judiciary Committee: Recommendation # 36,* 66th Leg., Reg.Sess. (1979). Similarly, the bill analysis on Chapter 10 of the Probate Code prepared for the legislature by the House Judiciary Committee recommended that by the proposed bill the Texas law of nontestamentary transfers should be codified in its present state along the structural lines set forth in the Uniform Probate Code, with no change in present Texas law, statutory or case law. There is no recorded debate or other legislative history to contradict these express statements of intent. Further, by using the terms "is made to survive to the surviving party or parties," which was substantially the same as the terms "made to survive to the surviving joint owner or owners" appearing in section 46, the legislature presumptively adopted the prior court constructions of what is sufficient under that section 46 language. *Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984); *see also McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125 (1943).

That language similar to the language at issue here, *was sufficient* to create the right of survivorship under section 46, was settled at the time the legislature enacted section 439. A financial institution's signature card signed only by the decedent but stating that an account was a joint account with right of survivorship was valid and effective to create a contract for the benefit of the survivor, i.e., a survivorship account. *Davis v. East Texas Savings and Loan Ass'n,* 163 Tex. 361, 354 S.W.2d 926 (1962). An account card directing the funds were payable to A or B "or payable to the survivor of either" as a contractual "recitation falls short of expressing a clear intention to vest the absolute right of ownership of the funds in the survivor," but was sufficient to create a rebuttable presumption that the depositor intended to vest ownership in the survivor. *Krueger v. Williams,* 163 Tex. 545, 550, 359 S.W.2d 48, 51–52 (1962).

The signature card in the present case contained much more than the mere "payable to the survivor" language addressed in *Krueger.* The card furthermore provided that the funds were jointly owned and that withdrawals by the survivor were binding on the heirs, devisees, and personal representatives, and acted as an acquittal of the savings association. Although the card's language is susceptible to the construction that the release of the financial institution is what is binding on the heirs

and devisees, not that the survivor owned the funds, the clear law under *Krueger* is that one presumes survivorship rights were intended unless there is extrinsic evidence of a different intent. Because respondent Henderson produced no summary judgment evidence of an intent contrary to a joint account with survivorship rights, the presumption applies. The language of the card was at least sufficient to create a rebuttable presumption of survivorship rights.

## Inconsistency with Prior Actions of the Court

There are two court of appeals opinions addressing the point at issue in this. They reach diametrically opposite conclusions and cannot be reconciled. Applications for writ of error in both cases were refused, no reversible error. In *Chopin v. InterFirst Bank Dallas, N.A.,* 694 S.W.2d 79 (Tex. App.—Dallas 1985, writ ref'd n.r.e.), the court held that under the new statutory provisions the payable to the survivor language was insufficient to create a presumption of survivorship rights. In *Sawyer v. Lancaster,* 719 S.W.2d 346 (Tex.App. —Houston [1st Dist.] 1986, writ ref'd n.r. e.), the court reached the opposite conclusion. A review of our court's records shows that these actions can be reconciled only by the position advocated in this dissent.

It is elementary that under our former writ notation and practice, if the error in a court of appeals' opinion was not preserved for our review on application for writ of error, the court would deny the application with the notation "refused, no reversible error." *In re Johnson,* 569 S.W.2d 882, 883 (Tex.1978). When this court reviewed the decision in *Chopin v. InterFirst Bank Dallas, N.A.,* 694 S.W.2d 79 (Tex.App.— Dallas 1985, writ ref'd n.r.e.), the *Chopin* petitioners failed to argue and therefore failed to preserve the point that the account signature card language was suffi-

cient under section 439 to create the right of survivorship. The similar issue of whether the bank agreement language was sufficient to create survivorship rights was preserved in *Sawyer v. Lancaster,* 719 S.W.2d 346 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Our "n.r.e." of the *Sawyer* case indicated no reversible error in that holding.

Further, as the members of the court joining the majority opinion well know, the writ notations of all the cases discussed as "confusing" by the majority can be reconciled by applying the rule that the *Krueger* presumption still applies. In many cases the error was not preserved, so the "n.r.e." notation was necessary. If extrinsic evidence was sought to be used to *contradict* the express terms of an unambigous writing creating survivorship rights, it was barred. But if "payable to the survivor" type language appeared, the presumption that survivorship rights applied unless extrinsic evidence showed a contrary intent.[6]

## Elevating "Magic Words" Over Common Sense

The *Krueger* presumption was grounded on common sense to protect the decedent's probable real intention. The distinction between the right to withdraw the funds and have the action "binding on the heirs" of the decedent, but that "ownership" of the funds would not "vest" in the survivor who withdrew them, is too fine a legal line to expect an ordinary depositor signing a joint account card to make. Some commentators have suggested that the only safe language to use to create survivorship rights would be the "magic words" "A or B with right of survivorship" or "A or B as joint tenants with right of survivorship." *See, e.g.,* Warach and Wright, *Money, Money, Who Gets the Money? Or Joint Bank Accounts With Right of Survivorship,* 47 Tex.Bar J. 237, 241 (1984). Though legally unambiguous, it is not clear that the recommended "magic words" would mean more

---

6. See *supra* notes 4 & 5 and accompanying text.

to the average layman than the words used in the present case. It is far more reasonable to believe, as the *Krueger* court did, that a layman using language conveying the message the funds were "payable to the survivor" would presumptively intend a survivorship account, but to allow extrinsic evidence to rebut that presumption. The court today destroys that common sense approach. The court's decision today in effect elevates "magic words" to a pedestal they never before achieved. Even though a layman reading the signature card in dispute here would probably think it gave the right of survivorship, the majority holds that failure to have the "magic words" means the language does not "make to survive to the surviving party" the funds in the account, because, we are told, that the survivorship and acquittal language is just to protect the financial institution.

It is ironic that the majority cites the dissent in *Quilter v. Wendland*, 403 S.W.2d 335 (Tex.1966), and *Forehand v. Light*, 452 S.W.2d 709 (Tex.1970), for the proposition that *Krueger* was somehow an inferior opinion limited to its facts. *See* majority opinion, *ante*, at 862 & n. 4. Both *Quilter* and *Forehand* support the application of the *Krueger* presumption to the facts of this case.

In *Quilter*, the issue was whether there was a third-party beneficiary contract. The dissent maintained that because the account agreement signed by the decedent had never been delivered to the financial institution, no contract had been created and therefore no third-party beneficiary status accrued to claimant. With respect to *Krueger* and quoting from *Krueger*, the dissent said:

> However, in Krueger, there was the additional fact that a receipt card was delivered to the savings association, whereas in the present case the passbooks and signature cards were not delivered. In Krueger, this Court gave great weight to the language appearing on the receipt card. The Court said:

> "However, the language appearing on this receipt card *does serve to vest in Mrs. Krueger some* present interest in and control over the certificate as well as the contractual right to possession of the proceeds as survivor." [Emphasis added.]

I can understand the holding in Krueger because the "receipt card" upon which the Court relied was actually delivered to the savings association.

*Quilter v. Wendland,* 403 S.W.2d 335, 339 (Tex.1966) (Smith, J. dissenting).

Compare the quoted and emphasized language from the *Quilter* dissent (quoting from *Krueger*) with what the signature card signed by Mrs. Henderson stated in the present case. The language on the joint account signature card stated, in part, that "[w]e agree * * * that all funds * * * are and shall be our joint property * * * and that upon the death of either of us any balance in said account or any part thereof may be withdrawn by, or upon order of the survivor * * * [and] shall be binding upon us and upon our heirs * * *." It is clear that *Krueger* applies directly and that the dissenting justices in *Quilter* would have acknowledged such.

The issue in *Forehand* was whether mere words of joint ownership, stating that the certificates of deposit were payable to the order of "Mrs. J.B. Poindexter or Mary Light," without more, created a right of survivorship. Likewise, the court's discussion of *Krueger* showed it clearly would apply to the facts presented by our present case:

> We had a more difficult decision in *Krueger v. Williams,* 163 Tex. 545, 359 S.W.2d 48 (1962) because a "joint control card" which evidenced the agreement of the decedent with a bank concerning an investment share account provided that the certificate was payable to "W.T. Williams and/or Ila Mae Krueger or payable to the survivor of either." Williams signed the card but Ila Mae Krueger did not. We held that the phrase "payable to the survivor" contained apt words to

raise a presumption of an intent to create survivorship rights even though the words fell short of the phrase "as joint tenants with the right of survivorship." The word "survivor" was vital to our decision in Krueger.

*Forehand v. Light,* 452 S.W.2d 709, 710 (Tex.1970).

*Krueger, Forehand,* and their progeny are all cases that seek to use a common sense approach to presume what the layman depositor probably intended, but allow extrinsic evidence to rebut that presumption as with any ambiguous contract. Today the court takes a giant step backward to requiring "magic words" when the legislative intent and prior decisions of our court would not.[7]

This case is even more egregious, because Mrs. Henderson by her will left her residuary estate not to her husband but to her sister, the same Mary K. Stauffer against whom the court affirms the judgment. Recitations in her will show Mrs. Henderson's marriage to J.D. Henderson was not her first, and that all her children were born during prior marriages. One may speculate that Mrs. Henderson did not trust her husband and deposited the funds in the joint account (with the survivorship language) because for whatever reasons she felt more comfortable with her sister's sharing control and ownership of the account. Today the court denies to Mary Stauffer the presumption that survivorship was intended. But on the trial of the sev-

ered matters, Mr. Henderson will have the benefit of the presumption that the funds were community property to claim half of them, despite the apparent intent of his late wife (from both the joint account card and her will) that her sister have the funds. We should not eliminate a common sense presumption in order to work an injustice.

For these reasons, I respectfully dissent.

GONZALEZ, J., joins in this dissent.

---

7. The legislature has now expressly addressed the problem finding words that are legally unambiguous to create a joint survivorship account but at the same time clearly express that intent in layman's terms. In 1987 the legislature amended section 439(a) by adding this sentence:

> Notwithstanding any other law, an agreement is sufficient to confer an absolute right of survivorship on parties to a joint account under this subsection if the agreement states in substantially the following form: "On the death of one party to a joint account, all sums in the account on the date of death vest in and belong to the surviving party as his or her separate property and estate."

Tex.Prob.Code Ann. § 439(a) (Vernon Supp. 1988).

By providing the "safe harbor" provision, the legislature has told financial institutions and their counsel exactly how to avoid ambiguity in drafting forms to create joint survivorship accounts. The careful practitioner is well advised to use substantially the same words now expressly sanctioned by the statute. By providing that the safe harbor language is sufficient "notwithstanding any other law," the legislature indicated it did *not* mean for the courts to retreat from the inroads made against requiring "magic words" and legalisms.