**Harry Joseph OTTO, Appellant,**

v.

**Olivia C. KLEMENT, Individually and as Administratrix of the Estate of Lorraine M. Otto, Deceased, et al., Appellees.**

**No. 07–81–0122–CV.**

Court of Appeals of Texas, Amarillo.

Aug. 30, 1983.

Rehearing Denied Sept. 30, 1983.

Cleo G. Clayton, Jr., Amarillo, for appellant.

Barry D. Peterson, Stokes & Fields, Amarillo, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

Harry Joseph Otto appeals from a take-nothing judgment rendered in his action for a declaration that three accounts held jointly by his deceased sister and him were owned by him and not by her heirs at law. The accounts, composed of funds deposited by the decedent and accrued interest, were a checking account and a savings account, each of which was a joint account of the sister and Otto with right of survivorship, and a certificate of deposit made payable to the sister and Otto, "Trustee." The judgment was rendered after the court admitted, over objection, parol testimony that the deceased intended the funds to be divided equally among her sisters and brothers. Concluding that the parol testimony was inadmissible to vary the legal effect of the joint survivorship accounts, we reverse the take-nothing judgment as to these accounts and render judgment decreeing that Otto owns the funds therein; but, concluding that the parol testimony was admissible to establish the legal meaning of the certificate of deposit, we affirm the take-nothing judgment in this respect.

During her lifetime, Lorraine M. Otto established three financial accounts [1] which were in existence on the date of her death. One was a checking account with The First National Bank of Amarillo, Texas; one was a savings account with Gibralter Savings Association; and one was a deposit evidenced by a certificate of deposit issued by The First National Bank of Amarillo, Texas.

On 9 April 1980, Ms. Otto designated her checking account, No. 35 530 5, as a joint survivorship account under printed contractual conditions agreed to by Ms. Otto and her brother, Otto, the parties to the contract. A portion of the conditions are:

### SURVIVORSHIP CONTRACT

The parties to this account agree that all moneys deposited by or for us, or either of us, in this account shall be credited to us jointly and may be paid out by Bank to or upon the order of both or either of us; and upon death of either of us, all moneys then remaining shall be paid to or upon the order of the survivor.

The parties evidenced the contract by the affixation of their authorized signatures.

---

1. The Texas Probate Code defines an "account" as a "contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, share account, and other like arrangement." Tex.Prob.Code Ann. § 436(1) (Vernon 1980).

The savings account, No. 401–3013479, was denominated on 9 April 1980 and renewed in October of 1980 as a joint tenancy account in the names of Lorraine Otto or Harry Otto. Their signatory agreement stated that the account was "As joint tenants with right of survivorship and not as tenants in common," and further provided

> that any funds placed in or added to the account by any one of the undersigned joint tenants is, and shall be, conclusively intended to be a gift, at that time, of such funds to the other joint tenant or joint tenants, to the extent of his or their pro rata interest in the account.

The signatures, Lorraine Otto and Harry J. Otto, were affixed to the agreement, and the account was evinced by a certificate.

The certificate of deposit, No. 81401, was issued on 6 October 1980 in the amount of $100,000. It was made payable to "Lorraine Marie Otto or Harry Otto, Trustee" on 6 April 1981, with interest at the rate of 12.30% per annum.

Ms. Otto died intestate on 18 October 1980. Her sister, Olivia C. Klement, qualified as administratrix of her estate. The inventory listed the appraisement of the checking account at $20,520.07, the savings account at $50,182.84, and the certificate of deposit at $100,404.38. These funds, totalling $171,107.29, comprised 79% of Ms. Otto's estate.

Harry Joseph Otto filed the action underlying this appeal for a declaration of the ownership of the funds.[2] He asserted his ownership of them and alleged that Ms. Klement, in her capacity as administratrix, is claiming that the funds constitute a part of Ms. Otto's estate. He sought judgment declaring that he is the absolute and exclusive owner of the funds and denying the other heirs of Ms. Otto any ownership right or interest in them.

In a bench trial, the court heard testimony bearing on Ms. Otto's intent in establishing the accounts and her intended distribution of the funds. The testimony was received over Otto's objections that it, in short, violated the parol evidence rule.

L.A. Townes, a long-time friend of Ms. Otto, was with her at the bank and the savings association in April of 1980 when she changed the name of her checking account and her savings account to include the name of Harry Otto. She expressed that she wanted to add Mr. Otto's name for convenience, and that she wanted the money to go to her sisters and brothers at her death. Townes described the savings account as a money market certificate, and declared that he was with Ms. Otto in October of 1980 when she renewed it. At that time, she expressed her intention for a division of the assets of her estate among her sisters and brothers. Townes also accompanied Ms. Otto to the bank where, after he declined to be connected with the account, she told the bank president she wanted Harry Otto's name "to continue on" the certificate for the convenience of her sisters and brothers and the division of her estate, but she did not tell him how she wanted the assets of her estate divided.

Don Marsalis, Jr., another long-time acquaintance of Ms. Otto who was employed as a stock broker, assisted Ms. Otto with some of her financial affairs. She discussed aspects of her estate with him, including a will. A few weeks before her death, Ms. Otto told him that she wanted her property divided equally among her sisters and brothers.

Geraldine Maxwell, branch manager of Gibralter Savings Association, had assisted Ms. Otto in handling her accounts at the association since 1975. Ms. Maxwell was not present when Ms. Otto designated the savings account as a joint tenancy account in the names of Lorraine Otto or Harry Otto on 9 April 1980, but when it was renewed in October of 1980, she discussed the account with Ms. Otto. Harry Otto's

---

**2.** Named as defendants by Otto were his sister, Olivia C. Klement, individually and as administratrix of the estate of Lorraine M. *Otto*, deceased; his sister, Mrs. Joe Fette; his sister, Mrs. Arthur Hellman; and his nephew, Jim Fette. Otto and these defendants, he alleged, constitute the heirs at law of Lorraine M. Otto.

name was on the certificate, Ms. Otto said, because he was going to be the one who would divide the money among her relatives.

The court rendered judgment that Harry Joseph Otto take nothing by his suit, denying all other relief.[3] Findings of fact and conclusions of law were neither requested nor made.

Otto has appealed with ten points of error. The gist of the points is that the court erred in two respects, *viz.:* (1) in admitting extrinsic evidence to vary and contradict the unambiguous written terms of the accounts, and (2) in determining that the funds did not belong to him. Ms. Klement and the other heirs at law have responded, asserting that the court correctly rendered judgment in their favor by decreeing that Otto was not entitled to the funds.

■ Prior to 27 August 1979, the holding of numerous cases, a holding upon which Ms. Klement and the other heirs at law rely, was that parol evidence was admissible to ascertain the intent of the depositor in establishing a joint survivorship account, even though the evidence contradicted the express terms of the account contract. On that date, Chapter XI of the Texas Probate Code became effective to provide for nontestamentary transfers. One of the sections of that chapter, Section 439(a), provides, in part, that

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by a written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties.

By this provision, it has been determined, the survivor owns all funds in a joint survivorship account, and evidence of the depositor's intent of ownership may not be considered. *Sheffield v. Estate of Dozier,* 643 S.W.2d 197, 198 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). Accordingly, the parol testimony received by the court was ineffective to change the legal ownership of the checking account funds and the savings account funds vested in Harry Joseph Otto, the survivor, by the written joint survivorship account agreements signed by Ms. Otto.

■ However, the same statutory disposition is not applicable to certificate of deposit No. 81401. Although the certificate is made to "Lorraine Marie Otto or Harry Otto, Trustee," there is no record evidence of a written agreement signed by Ms. Otto which signifies that her interest in the deposit is to survive to Otto.[4] "A survivorship agreement will not be inferred from the mere fact that the account is a joint account." Tex.Prob.Code Ann. § 439(a) (Vernon 1980).

Still, Otto contends that Ms. Otto, by having the certificate issued in the names "Lorraine Marie Otto or Harry Otto, Trustee," named herself a joint tenant and beneficiary of Otto, thereby creating a trust account of funds which he, as trustee, owns. The contention flows from Otto's interpretation of Section 436(14) of the Probate Code to mean that, in his words, "[t]o create a trust account all that is necessary is the naming of a person trustee." The interpretation is faulty.

■ Section 436 contains the definitions of the terms used in the statutory provisions for multiple-party accounts. The por-

---

3. Although Otto petitioned for a "declaration of ownership" of the funds, the judgment rendered is "negative in form and effect," a permissive declaration under the Uniform Declaratory Judgments Act. Tex.Rev.Civ.Stat.Ann. art. 2524–1, § 1 (Vernon 1965). None of the parties has objected to the form of the judgment.

4. Otto introduced a signature card dated 9 April 1980 and carrying the signatures "Lor-

raine Marie Otto" and "Harry J. Otto" for account "CD# 79033" entitled "Lorraine Marie Otto or Harry Otto" at The First National Bank of Amarillo, Texas. He asserts that this signature card also served as the signature card for the certificate of deposit No. 81401 at issue in this cause, but the assertion is not supported by the record. In any event, the signature card introduced is silent as to any right of survivorship.

tion of Section 436(14) upon which Otto relies reads:

> "Trust account" means an account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and there is no subject of the trust other than the sums on deposit in the account.

It is at once apparent that the statute has not altered the general rule that the mere use of the word "Trustee" does not of itself create a trust, *Costello v. Hillcrest State Bank of University Park,* 380 S.W.2d 780, 782 (Tex.Civ.App.—Dallas 1964, no writ), nor mean that the money deposited is a trust. *Trustees of Graceland Cemetery Improvement Fund v. United States,* 515 F.2d 763, 775, 206 Ct.Cl. 609 (1975). Not only does the statute require a trust account to be in the name of a person as trustee, but for a deposit to become a trust account, the statute requires the relationship to be established by the form of the account and the deposit agreement with the depository. Absent from this record is any deposit agreement establishing the deposit represented by certificate No. 81401 as a trust account; therefore, it cannot be said as a matter of law that the account is a trust account.

■ What, then, is the nature of the account? Its meaning must be determined by considering the wording of the certificate in the light of the surrounding circumstances, other than Ms. Otto's oral statements of what she intended, and applying the pertinent rules of construction. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1982).

■ Two cardinal rules of construction are primarily applicable. The certificate is to be construed in accordance with its plain language, *General American Indemnity Company v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960), it being presumed that every term was intended to have a harmonizing effect in evidencing the agreement. *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617, 620 (1954).

The language of the certificate differs from the words in the forms of the checking account and the savings account which Ms. Otto previously had established as joint survivorship accounts by executing agreements to that effect. So far as this record reveals, she did not execute any agreement respecting the deposit for which the certificate was issued; instead, she caused the certificate to be issued in multiple-party form by which the surviving party was characterized as "Trustee." Given the presumption that the word "Trustee" was chosen to effectuate an intended result, it logically follows, in the light of the surrounding circumstances aside from Ms. Otto's expressions, that she intended a different relationship for the deposit evidenced by the certificate than she did for the checking and savings accounts.

However, the exact relationship is not disclosed by the certificate; for, conceding that the form of the certificate serves to vest some interest in and control of it by Otto, the concession does not determine the ownership of the funds. It still remains genuinely uncertain whether, by the use of the term "Trustee," Ms. Otto intended, as Otto asserts, to name herself the beneficiary of Otto and to vest absolute ownership of the funds in him at her death, or Ms. Otto intended, as Ms. Klement and the other heirs at law maintain, that Otto, as trustee under the common understanding of the term, administer the funds not for himself, but for others at her death. *See* Black's Law Dictionary 1357 (5th ed. 1979).

■ Since the language of the certificate is reasonably susceptible of more than one meaning, the trial court properly admitted parol evidence to ascertain the correct meaning. *Trinity Universal Ins. Co. v. Ponsford Brothers,* 423 S.W.2d 571, 575 (Tex.1968). Without findings of fact and conclusions of law by the trial court, it must be presumed that all questions of fact were found to support the portion of the judgment denying Otto ownership of the funds represented by the certificate of deposit. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.

1977). In his attack on the court's judgment, Otto has not challenged the evidential basis for the court's implied finding that Ms. Otto did not intend for him to have ownership of the certificate-of-deposit funds at her death. Therefore, this portion of the judgment must be upheld on this theory which is supported by evidence. *Id.*

We have considered all aspects of Otto's points of error, some of which apply to all of the accounts. To the extent that Otto is successful on appeal, the points are sustained; otherwise, they are overruled.

Accordingly, that portion of the judgment decreeing that Otto take nothing by his action for a declaration of his ownership of the checking account and the savings account funds is reversed, and judgment is here rendered decreeing that Harry Joseph Otto owns, and shall recover, the funds on deposit in Account No. 35 530 5 with The First National Bank of Amarillo, Texas, and the funds on deposit in Account No. 401–3013479 with Gibralter Savings Association. Tex.R.Civ.Pro. 434. In all other respects, the judgment is affirmed.

Costs of appeal are assessed as follows: 59% to Harry Joseph Otto, and 41% to Olivia C. Klement and the other heirs at law. Tex.R.Civ.Pro. 448.