**Bob ISBELL, Virginia Schell and Pauline Merritt, Independent Executors of the Estate of Annie Isbell, Deceased, Appellants,**

v.

**Brenda Schell WILLIAMS and Mark Schell, Appellees.**

**No. 9402.**

Court of Appeals of Texas,
Texarkana.

Jan. 14, 1986.

Rehearing Denied Feb. 11, 1986.

Pat C. Beadle, Beadle & Beadle, Clarksville, for appellants.

Douglas W. Skemp, Dallas, for appellees.

GRANT, Justice.

The independent executors of the estate of Annie Isbell, deceased, appeal the judgment of the trial court, based upon a jury verdict, which awarded funds deposited in the First Federal Savings and Loan Association of Paris, Texas, to Brenda Williams and Mark Schell as trust beneficiaries.

The executors complained that there was no evidence or insufficient evidence to support the issues submitted to the jury, and the appellees complained that the trial court erred in not awarding reasonable attorney's fees for breach of contract.

On February 22 and on August 20, 1980, Annie Isbell opened joint savings accounts with the First Federal Savings and Loan Association, entitled "Annie Isbell TR/ for Brenda Schell Williams and Mark Schell." [1] (The testimony indicated the TR was under-

---

1. One of the accounts had the last names of Williams and Schell at the beginning of their names as specified by the form.

stood by the Savings and Loan and Isbell to mean trustee.) This language appeared on the top of each deposit card. These accounts were opened on printed form "joint savings account" cards, and only Annie Isbell signed the cards.

Annie Isbell died on May 28, 1981, with both of these accounts still in existence. Brenda Williams and Mark Schell presented a claim for these funds, and the Savings and Loan Association filed a petition in interpleader asking the court to determine the ownership of the funds. The suit named the executors and Brenda Williams and Mark Schell as defendants.

Schell and Williams took the position that the accounts were trust funds for their benefit and to which they were entitled after the death of Annie Isbell.

Chapter XI of the Texas Probate Code entitled "Nontestamentary Transfers" contains the following provisions:

PART 1. MULTIPLE-PARTY
ACCOUNTS

§ 436. Definitions

. . . .

(14) "Trust account" means an account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and there is no subject of the trust other than the sums on deposit in the account. It is not essential that payment to the beneficiary be mentioned in the deposit agreement. A trust account does not include a regular trust account under a testamentary trust or a trust agreement which has significance apart from the account, or a fiduciary account arising from a fiduciary relation such as attorney-client.

§ 439. Right of Survivorship

. . . .

(c) If the account is a trust account, on death of the trustee or the survivor of two or more trustees, any sums remaining on deposit belong to the person or persons named as beneficiaries, if surviving, or to the survivor of them if one or more die before the trustee, unless there is clear and convincing evidence of a contrary intent. If two or more beneficiaries survive, there is no right of survivorship in event of death of any beneficiary thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between them. Tex.Prob.Code Ann. §§ 436, 439 (Vernon 1980).

The executors complain that the undisputed evidence showed that Annie Isbell retained control of the funds in the account until her death, collected the interest on the funds as it accrued, paid taxes on the interest income, never relinquished control of the funds, and never parted with the title to the funds. These factors are not relevant, because Tex.Prob.Code Ann. § 438 (Vernon 1980) sets forth a presumption of ownership by the trustee during her lifetime unless a contrary intent is specifically indicated or proved.[2] Thus, the statute allows a type of trust account with continued ownership and control by the trustor, and the factors of control and use are not inconsistent with this type of trust account.

The deposit agreement was made on a printed form entitled "Joint Savings Account (Subject to Order of Either)" which contained the following language:

The undersigned hereby apply for a savings account in the FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PARIS, TEXAS in the joint names of the undersigned as joint tenants, with the right of survivorship, and not as tenants in common. *Specimens of the signatures of the undersigned are shown below and the Association is hereby authorized to act without further inquiry in accordance with writings bearing either such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the member-

---

**2.** Tex.Prob.Code Ann. § 438(c) (Vernon 1980) provides:

Unless a contrary intent is manifested by the terms of the account or the deposit agreement

ship and any account in said Association held by the other person or persons named in the account be living or not. The withdrawal or redemption value of any such account or other rights relating thereto may be paid or delivered in whole or in part to any one of the undersigned, who shall first act, and such payment or delivery or a receipt or acquittance signed by any one of the undersigned shall be valid and sufficient (sic) release and discharge of said Association.

Is the account created a trust account, a joint savings account, an individual account, or none of the foregoing? We have an account which appears from the form of the names, i.e. Annie Isbell trustee for Brenda Williams and Mark Schell, to be a trust account, which appears from the printed language of the deposit agreement to be a joint account, and which appears from the signature line to be an individual account.

 Section 439 permits a right of survivorship in a joint account if it contains a specific survivorship provision. A survivorship agreement will not be inferred from the mere fact that the account is a joint account. There is no requirement that the survivor sign the agreement, but only that the agreement be signed by the party who dies. However, the right-of-survivorship clause in the present case refers to the undersigned,[3] and the only undersigned person was Annie Isbell. So the survivorship language becomes meaningless. It must be concluded that the account does not meet the requirements of a joint account with a right-of-survivorship.

 Next, we must determine if the account meets the requirements of a trust account under the statute. The definition of a trust account requires that it be established by the form of the account and the

deposit agreement with the financial institution.

In reviewing the cases involving such accounts, we must consider them in the context of the applicable statutes that were in effect at that time. These cases can be better understood by dividing them into three time frames: prior to the enactment of the Texas Trust Act; after the passage of the Texas Trust Act, but before the nontestamentary provisions of the Probate Code; and after the passage of the nontestamentary provisions of the Texas Probate Code.

### Prior to the Enactment of the Texas Trust Act

In the case of *Fleck v. Baldwin,* 141 Tex. 340, 172 S.W.2d 975 (1943), the court held that the use of the term "in trust", standing alone, does not create a presumption that the depositor intended to create an irrevocable trust. However, at the time the *Fleck* case, *supra,* was decided, trusts were considered to be irrevocable unless an expressed power of revocation was reserved in the terms of the trust. Therefore, in *Fleck, supra,* the court assumed that the deposits and certificates held "in trust" created either an irrevocable trust or no trust at all.

### After the Passage of the Texas Trust Act, But Before the Nontestamentary Provisions of the Probate Code

After the Texas Trust Act was passed, the case of *Citizens National Bank of Breckenridge v. Allen,* 575 S.W.2d 654 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.), determined that a valid inter vivos trust can be created even though the trustor reserves the power to revoke if the equitable title otherwise passes at the time of creation. This case cited the trust statute which provided that every trust shall be revocable by the trustor during his life-

---

or there is other clear and convincing evidence of an irrevocable trust, a trust account belongs beneficially to the trustee during his lifetime, and if two or more parties are named as trustee on the account, during their lifetimes beneficial rights as between them are governed by

Subsection (a) of this section. If there is an irrevocable trust, the account belongs beneficially to the beneficiary.

3. The word "undersigned" appears six times in the body of the printed form.

time unless expressly made irrevocable by the terms of the instrument. Tex.Rev.Civ. Stat.Ann. art. 7425b–41 (Vernon 1960).[4] This case held that recitals on a stock certificate which said "in trust" for another are evidentiary only, and do not give rise to a presumption that a trust was intended. Thus, the ultimate and controlling question is the intent to establish a trust. A valid inter vivos trust can be created, even though the trustor reserves the power to revoke, if equitable title otherwise passes at the time of the creation. When a valid inter vivos revocable trust is established and not revoked during the lifetime of the trustor, it becomes irrevocable on her death, and there being no other unfulfilled purpose of the trust expressed, the trust terminates and is enforceable by the beneficiaries. *Citizens National Bank of Breckenridge v. Allen, supra.*

### After the Passage of the Nontestamentary Provisions of the Texas Probate Code

The case of *Otto v. Klement*, 656 S.W.2d 678 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.), was a case decided after the enactment of the nontestamentary provisions of the Texas Probate Code. This case dealt with a joint account in which the term "trustee" was used after the names of the brother and sister, but no beneficiary was named. The court held that parol evidence was not admissible, because there was a specific survivorship provision, and this written agreement could not be varied by parol evidence. The same case also involved a certificate of deposit which did not contain a survivorship clause. The court held that a survivorship agreement could not be inferred from the mere fact that this was a joint account.

In *Otto, supra,* the brother attempted to establish his right of ownership under the trust account provision of the probate code. The court found that the language of the certificate was ambiguous and allowed par-

ol evidence to ascertain the correct meaning.

Clearly, the printed form furnished by the Savings and Loan Association to Annie Isbell was not designed for the purpose of creating a trust account. The question becomes whether the language written onto this printed form, i.e. Annie Isbell TR/ for Brenda Williams and Mark Schell, coupled with the deposit agreement, is sufficient to establish a trust account. We cannot say that there was not a deposit agreement with the financial institution because, after disregarding the references to the survivorship of the undersigned, there is still an agreement with the First Federal Savings and Loan Association to apply for a savings account and authorizing Annie Isbell to sign matters relating to that account. Basic rules of contract would apply to this agreement, being that the written language would control over the printed matter. *Southland Royalty Co. v. Pan American Petro. Corp.*, 378 S.W.2d 50 (Tex.1964); *Montgomery Ward & Co., Inc. v. Dalton*, 665 S.W.2d 507 (Tex.App.—El Paso 1983, no writ). Specifically, we have the language as a part of the deposit agreement naming Annie Isbell as trustee for Williams and Schell. Also, this language is in conflict with the printed language calling this agreement a joint savings account. This conflict creates an ambiguity which would allow parol evidence to determine the proper construction. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968).

The jury was asked in two special issues if Annie Isbell intended that the funds in the accounts were to become the property of Brenda Williams and Mark Schell on her death. The jury found that to be her intentions, but this finding has no legal import. Intentions are important in the law, but the statutes have established specific methods which must be used in order to transfer property whether it be by

---

**4.** Repealed by Acts 1983, 68th Leg., p. 3729, ch. 576, § 6, and now included in Tex.Prop.Code Ann. § 112.051 (Vernon 1984).

will, deed, or trust instruments. The intent of these laws is to avoid confusion, controversy and litigation by encouraging established forms, so that every situation will not require litigation to attempt to ascertain the intent of the deceased. There was testimony from a bank employee to the effect that Annie Isbell asked the bank to set up a trust account.

The nontestamentary provisions of the probate code are an exception to the requirements of testamentary transfers. The controlling fact issue was whether or not the form of the account and the deposit agreement (along with parol evidence to clarify ambiguities) was sufficient to comply with the requirements of a trust account as set forth in Section 436(14). The jury should determine if Annie Isbell set up trust accounts as defined by statute, not what she intended to occur upon her death.

The judgment is reversed and, in the interest of justice, we remand this case to the trial court for the determination of the factual issue of the nature of the accounts.