**Stella A. OADRA, Appellant,**

v.

**Robin Denise Oadra STEGALL, Individually and as Next Friend of Jeffrey and Matthew Stegall, and as Successor Administratrix of the Estate of John J. Oadra, Deceased, Appellees.**

**No. B14-90-00863-CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 12, 1992.

Rehearing Denied May 14, 1992.

Timothy E. McKenna, Houston, for appellant.

Mary Ann Faust, Paul D. Clote, Houston, for appellees.

OPINION ON MOTION
FOR REHEARING

JUNELL, Justice.

Upon motion for rehearing *en banc*, the opinion issued by a panel of this court on June 13, 1991, is withdrawn and the following opinion is substituted therefor.

This case involves interpretation of provisions of Chapter XI of the Texas Probate Code. The dispute involves the ownership of funds on deposit in an account at Mainland Savings. Following a jury verdict in favor of the appellees, the trial court awarded twenty-five percent (25%) of the funds in the account to each of the following named persons: Robin Denise Oadra Stegall, Jeffrey Stegall, and Matthew Stegall. The remaining twenty-five percent (25%) was awarded to the appellant, Stella A. Oadra. Appellant brings twelve points of error; however, her basic contention, which is contained in her first point of error, is that the trial court erred in failing to award her the entire amount in the account. Our decision on the first point of error disposes of this appeal; therefore, it is unnecessary to discuss the remaining points of error except with regard to the issues of attorney's fees and pre-judgment and post-judgment interest.

In 1982, John J. Oadra and his mother, Stella A. Oadra, opened a "Jumbo" account at Mainland Savings. That account was opened with a cashiers check in the amount of $506,777.27 payable to John Oadra and Stella Oadra, as co-trustees. The "Jumbo" account was renewed periodically and on February 1, 1984, John Oadra and Stella Oadra placed the money remaining in the "Jumbo" account in the account referred to as the Primary Account in the questions submitted to the jury and in the judgment of the trial court. The account opened on February 1, 1984 is the subject of the controversy in this appeal.

The Primary Account was created under the terms and provisions of an Account Signature Card and a Revocable Trust Agreement. The front of the account card reads as follows:

**462** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

## ACCOUNT SIGNATURE CARD

[ ] Saving [ ] Checking **(Revocable Trust)** Account No. 48-095391-9
XX Certificate [ ] Other ___71 days___ 49-095317-4
 **JUMBO**

S.S. No ___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___ Date ___2-1-84___.

_____MAINLAND SAVINGS ASSOCIATION_____.

____Baytown____Texas ("Association"), agrees with Accountholder(s) to establish the above number
account (and any additional accounts specified below), subject to the terms and conditions hereon in the following names(s):

Accountholder(s):_____ John J Oadra or Stella A Oadra _____.

_____. Trustee

for _____ John J & Michael Oadra & _____.
 Robin & Jeffrey & Matthew Stegall _____.

Beneficiary(ie
Under Revocable Trust Agreement dated _____ 2 __, 19 84 _____.

Additional Accounts _____.

The Association is authorized to act in all matters relating to the account upon the written order of any one of us, before or after the death of any of us or of any one of the Grantor signing the Trust Agreement.

THE ASSOCIATION MAKES NO REPRESENTATION OR WARRANTY AS TO THE FEDERAL INCOME, ESTATE, OR GIFT TAX OR TEXAS INHERITANCE _ CONSEQUENCES ATTRIBUTABLE TO THIS ACCOUNT OR THE ACCEPTABILITY OF THIS ACCOUNT AS A SUBSTITUTE FOR A WILL

Accountholder(s) Signatures

/s/ John J. Oadra _____. /s/ Stella A. Oadra _____.
Trustee Trustee

The back of the account card read:

## TERMS AND CONDITIONS

General: The account(s) are subject to the charter and bylaws of the Association, all applicable laws and rules of the United States and the State of Texas, and any rules and regulations applicable to such account(s), including minimum balances, service charges and rates of earnings, which may be established from time to time by the Association. Accountholder(s) acknowledge receipt of a current copy of such rules and regulations, if any. The Association reserves the right to change such rules and regulations at any time and shall give notice of changes by posting a copy of such changes in the lobby or by sending a copy thereof to Accountholder(s) at the address shown on the Association's records.

Forms: Accountholder(s) may use only those forms supplied or approved by the Association, and the Association may return unpaid any other forms of order or any order incompletely drawn.

Termination: The account relationship may be terminated by the Association at any time and without previous notice by mailing notice thereof and a check for the account balance, if any, to Accountholder(s) at Accountholders' address as shown on the Association's records.

Advances: Association may charge Accountholder(s) the maximum legal rate of interest on advances and overdrafts from the date of advance or overdraft until paid.

COLLECTION AGREEMENT:

The Association shall have the rights, duties and obligations of a "depository" or "collecting bank: with respect to all items tendered for deposit or credited to the account(s) by Accountholder(s) and of a "payor bank" with respect to all items drawn on it by Accountholder(s) under the provisions of Chapter 4 of the Business and Commerce Code of Texas. Any amount not collected for which credit has been given and any expenses, including attorney's fees and costs incurred by the Association in connection with the account(s), may be charged to the account(s).

## REVOCABLE TRUST AGREEMENT

A trust under the Texas Trust Act is hereby created by the undersigned Grantor(s) with respect to the funds in the account(s) identified on the reverse side hereof [the Account(s)]. The Trustee(s) of such Trust and the Beneficiary(ies) shall be the individuals named as such on the reverse side hereof.

The conditions of this Trust are as follows:

(1) Trustee(s) shall hold, manage, invest, and reinvest the funds credited to the Account(s) in securities of the Association identified on the reverse side. Any future deposits made to the Account(s) will be subject to this Trust.

(2) This Trust may be revoked in whole or in part at any time by a written request signed by the Grantor(s), or either of them if more than one, or withdrawal of funds from the Account(s), in which event the amount requested shall be delivered by Association to the Grantor(s) (or to the survivor in case one of them is then deceased).

(3) This Trust shall continue until the death of the Grantor, or both Grantors, if not sooner revoked. At such time, the funds in the Account shall be distributed to the then living Beneficiary(ies)(equally if there are multiple Beneficiaries). In the event all Beneficiaries die before such termination date, the funds in the Account(s) shall be paid to the Grantor(s) or to the surviving Grantor if one of them is deceased. If no Grantor is then living, the distribution shall be to the estate of the Grantor who is last to die.

(4) In the absence of a Trustee capable of acting and distribution of the funds in the Account(s) is required hereunder, the Association may, at its option, pay out funds in the Account(s) directly to the person(s) entitled thereto hereunder or in any manner allowed by Chapter XI of the Texas Probate Code, and after so doing shall have no

responsibility to follow the application of the funds.

Signed this _____2__ day of _____ 1_ 19 _84___ .

__/s/___Stella A. Oadra_____ . _____ .
Grantor Grantor

The beneficiaries of the Revocable Trust Agreement were named on the front of the account card. They are John J. and Michael Oadra and Robin, Jeffrey and Matthew Stegall. Robin Stegall and Michael Oadra are the children of John J. Oadra and the grandchildren of Stella A. Oadra. Jeffrey and Matthew Stegall are the children of Robin Stegall, the grandchildren of John J. Oadra, and the great grandchildren of Stella A. Oadra.

On April 14, 1984, John J. Oadra was murdered. His last will and testament, dated April 10, 1980, left his estate to Michael Oadra and Robin Stegall. On the date of the murder, the account at Mainland Savings had in it a balance of $408,-366.74.

A short time after John J. Oadra's death, appellant removed the funds from the account and placed them in a new account. Subsequently, various suits were filed to determine ownership of the funds. The final judgment divided the funds as stated above. Stella A. Oadra appeals from that judgment.

In her first point of error, appellant contends the trial court erred in not rendering judgment in her favor for the full amount in the Primary Account because upon the death of John J. Oadra, appellant owned all of the funds in the account as trustee under TEX.PROB.CODE ANN. Chapter XI.

■ Chapter XI of the Texas Probate Code provides for non-testamentary transfers. Specifically, this chapter provides for the creation and disposition of multiple-party accounts. There are three types of accounts under this chapter: joint accounts, P.O.D. accounts and trust accounts. TEX.PROB.CODE ANN. § 436(5) (Vernon 1980). The first issue in the instant case is which type of account was created by John J. Oadra and Stella A. Oadra at Mainland Savings.

Appellant alleged and the trial court found as a matter of law that the account in question was a trust account under TEX. PROB.CODE ANN. § 436(14) which reads:

"Trust account" means an account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and there is no subject of the trust other than the sums on deposit in the account. It is not essential that payment to the beneficiary be mentioned in the deposit agreement. A trust account does not include a regular trust account under a testamentary trust or a trust agreement which has significance apart from the account, or a fiduciary account arising from a fiduciary relation such as attorney-client.

TEX.PROB.CODE ANN. § 436(14) (Vernon 1980).

Appellees contend that the account was not a trust account, but rather was a joint account under TEX.PROB.CODE ANN. § 436(4):

"Joint account" means an account payable on request to one or more of two or more parties whether or not there is a right of survivorship.

TEX.PROB.CODE ANN. § 436(4) (Vernon 1980).

Appellees base their contention on the fact that John J. Oadra failed to sign the "Revocable Trust Agreement" on the back of the account card. Appellees contend that John J. Oadra did not intend to create a trust account because he did not sign the back of the account card. However, John J. Oadra did sign the front of the account card, an account clearly titled "Revocable Trust." The front of the account card provides that the savings association "agrees with Accountholder(s) to establish the above numbered account(s) ... subject to the terms and conditions hereon ... under Revocable Trust Agreement dated 2, 1984."

Both John J. Oadra and Stella A. Oadra signed the front of the account card as Trustees and as Accountholders. All of the terms and conditions and the Revocable Trust Agreement are set forth on the back of the account card and without any doubt were the "terms and conditions and the Revocable Trust Agreement" referred to on the front of the account card. By signing the front of the account card as Trustees and Accountholders, John J. Oadra and Stella A. Oadra agreed to the terms and conditions and the Revocable Trust Agreement set forth on the back of the account card.

The back of the account card was to be signed only by the grantor or grantors. In this case only Stella Oadra signed as grantor.

 At the trial of the case both parties introduced evidence regarding John J. Oadra's intention in setting up the account. However, the mere intention of a depositor as to use or ownership of the funds upon his death cannot be considered in determining the disposition of those funds. *Sheffield v. Estate of Dozier,* 643 S.W.2d 197, 198 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). Only the language of the contract with the bank may be considered to determine the nature of the account in question. *Id.* In holding that the account was a trust account as a matter of law, the trial court properly disregarded parol evidence admitted during trial concerning the intent of John J. Oadra. *See Trinity Universal Ins. Co. v. Ponsford Brothers,* 423 S.W.2d 571, 575 (Tex.1968); *Otto v. Klement,* 656 S.W.2d 678, 682 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). The plain language of the account signature card shows that a Revocable Trust was created with John J. Oadra and Stella A. Oadra as co-trustees, Stella A. Oadra as grantor, and John J. Oadra, Michael Oadra, Robin, Jeffrey, and Matthew Stegall as beneficiaries.

 Looking at the language embodied in the entire document, i.e. both sides of the account card, it is clear that the account created by the document was a trust account subject to and governed by the provisions of Chapter XI of the Texas Pro-

bate Code. The trial court correctly ruled as a matter of law that the account in question was such an account. Having determined the nature of the account in question, we must now look to Chapter XI of the Texas Probate Code to determine who owned the funds in the trust account upon the death of John J. Oadra.

The purpose of Chapter XI of the Texas Probate Code, first enacted in 1979, is to provide for non-testamentary transfers of bank accounts. It is modeled after the Uniform Probate Code with some changes. The function of Chapter XI is to avoid probate.

Part 1 of Chapter XI consists of §§ 436 through 449 of the Texas Probate Code. These sections govern multiple party accounts. With respect to trust accounts § 438(c) governs beneficial ownership of a trust account during the lifetimes of the trustees. It provides as follows:

> Unless a contrary intent is manifested by the terms of the account or the deposit agreement or there is other clear and convincing evidence of an irrevocable trust, a trust account belongs beneficially to the trustee during his lifetime, and if two or more parties are named as trustee on the account, during their lifetimes beneficial rights as between them are governed by Subsection (a) of this section. If there is an irrevocable trust, the account belongs beneficially to the beneficiary.

Tex.Prob.Code Ann. § 438(c) (Vernon 1980).

By applying § 438(a) to trust accounts when two or more parties are named as trustees, during their lifetimes the trust account belongs to the trustees in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

In the instant case when John J. Oadra died, his mother, Stella A. Oadra, continued to be a trustee of the account. After her son's death she was "the trustee" under § 438(c) and as such was the beneficial owner of the trust account.

Section 439(c) contains provisions governing rights of survivorship in a trust account. It provides as follows:

> If the account is a trust account, on death of the trustee or the survivor of two or more trustees, any sums remaining on deposit belong to the person or persons named as beneficiaries, if surviving, or to the survivor of them if one or more died before the trustee, unless there is clear and convincing evidence of a contrary intent. If two or more beneficiaries survive, there is no right of survivorship in event of death of any beneficiary thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between.

TEX.PROB.CODE ANN. § 439(c) (Vernon 1980).

Under § 439(c) it is clear that the beneficiaries named in the trust account in this case never became parties to the account or the beneficial owners of any part of the account. Section 436(7) of the Texas Probate Code defines "party" to mean a person who, by the terms of the account, has a present right, subject to request, to payment from the account. In the instant case, the beneficiaries never had such a present right to payment because Stella A. Oadra, the trustee, is still alive.

Section 439(c) does not require the account card to contain any particular language to make the remaining trustee the beneficial owner of the funds in the account on the death of the other trustee. The funds in the account belong to the surviving trustee during her lifetime under the provisions § 438(c). The first sentence of § 439(c) clarifies this point because it states that beneficiaries take on death of the survivor of two or more trustees.

Section 447 further supports Mrs. Oadra's position because it states that a trust account may not be paid to any beneficiary unless he furnishes proof that he has survived all of the trustees.

Appellees contend that § 439(c) applies only when a sole trustee dies or when all trustees have died. Appellees argue that this section is not applicable to this case because one trustee, Stella A. Oadra, is still living, and thus, § 439(d) controls. Section 439(d) provides as follows:

> In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of his estate.

TEX.PROB.CODE ANN. § 439(d) (Vernon 1980)

Appellees argue that subsection (c) is not applicable and that this is one of those "other cases" provided for by subsection (d), and thus, the right to the money in the trust account passes to the estate of John J. Oadra. We disagree with this contention of appellees. A comparison of Chapter XI of the Texas Probate Code with the Uniform Probate Code will demonstrate why we hold that this case is not controlled by subsection 439(d).

Our determination that Stella A. Oadra was the beneficial owner of the funds in the trust account following the death of John J. Oadra is confirmed by a review of the changes made in the Uniform Probate Code when adopted by the Texas Legislature. In adopting § 6–104(c) of the Uniform Probate Code [§ 439(c) of the Texas Probate Code] the legislature deleted that portion which expressly provided that if the account is a trust account "(1) on death of one of two or more trustees, the rights to any sums remaining on deposit are governed by Subsection (a)." Unif.Prob.Code § 6–104, 8 U.L.A. 525 (1990).

Also, the Uniform Probate Code provides in § 6–104(c) the following: "(2) on death of the *sole* trustee or the survivor of two or more trustees, any sums remaining on deposit belong to the person or persons named as beneficiaries ..." *Id.* (emphasis added). In enacting § 439(c) the Texas Legislature deleted the word "sole."

Had the Texas Legislature not made those changes, on the death of John J. Oadra, § 439(a) of the Texas Probate Code would apply. Because of the changes it is clear that the Texas Legislature did not intend trust accounts to be governed by §§ 439(a) or 439(d). Because of the changes made by the Texas Legislature, it is clear that § 439(c) applies to the facts of this case.

Comparison of Chapter XI of the Texas Probate Code with the Uniform Probate Code reinforces our conclusion that the funds in the trust account at the time of John J. Oadra's death belong beneficially to his mother, Stella A. Oadra, as trustee.

Beyond the fact that Stella A. Oadra is entitled to the funds under the provisions of Chapter XI of the Texas Probate Code, she is also entitled to the funds under the language contained in the account card. On the back of the account card there is the statement that the trust can be revoked at any time by a written request from the grantor or by the withdrawal of the funds from the account by the grantor. Stella A. Oadra signed the account card as the grantor.

The jury found that Stella A. Oadra was not a grantor; however, that finding is contrary to the clear provisions of the account card and must be disregarded. As stated above, only the language of the contract with the bank may be considered to determine the nature of the account in question. *Sheffield*, 643 S.W.2d at 198 (intent of parties is determined from parol evidence and must be disregarded). *Otto*, 656 S.W.2d at 682. Parol evidence was not admissible to determine the nature of the account, and it was not admissible to vary the terms and designation of parties to the account. Thus, Stella A. Oadra was the grantor and by the terms of the agreement on the back of the account card she could revoke the account at anytime by a written request signed by her or by withdrawal by her of funds from the account. Stella A. Oadra withdrew the funds from the trust account, thereby revoking the trust.

Appellant's first point of error is sustained.

Sustaining appellant's first point of error makes it unnecessary to review her other contentions as to errors made by the trial court relating to the dispute over the trust account. However, since the appellees are no longer the prevailing parties in this suit, it is necessary to discuss the issues of attorney's fees and pre-judgment and post-judgment interest.

The jury found that appellees had incurred, through the trial of this case, reasonable and necessary attorney's fees in the amount of one hundred thousand dollars ($100,000), the attorney ad litem had incurred fees in the amount of ten thousand dollars ($10,000), and appellant had incurred attorney's fees in the amount of fifty thousand dollars ($50,000). The trial court reduced the amounts found by the jury and awarded appellee Robin Denise Stegall sixty-five thousand dollars ($65,000) in attorney's fees, and declared that appellant should recover nothing on her claim for attorney's fees. The trial court awarded the ad litem twenty thousand dollars ($20,000) in attorney's fees. These amounts constituted awards of attorney's fees through all potential state court appeals. In the event that certain appeals were not made, appellant Stella A. Oadra would receive a credit toward the amount she was to pay in attorney's fees.

In light of our decision rendering judgment in favor of appellant, we also find that appellant Stella A. Oadra is entitled to recover attorney's fees in the amount of sixty-five thousand dollars ($65,000), the amount found by the jury to be the reasonable and necessary attorney's fees incurred by appellant through trial and appeal to the court of appeals. We further hold that Robin Denise Stegall and the estate of John J. Oadra recover nothing on their claims for attorney's fees. As to the attorney ad litem fees awarded by the trial court, those shall be paid by Robin Denise Stegall and the estate of John J. Oadra, not by appellant Stella A. Oadra.

Further, the trial court's award of pre-judgment and post-judgment interest in favor of appellees is also reversed. Appellant is not required to pay interest on a judgment that was erroneously rendered against her.

As appellees' cross-points concern issues already disposed of by this opinion, it is unnecessary to review them here. Appellees' five cross-points are overruled.

In the judgment of the trial court funds in a second account, the small account, were awarded to the Estate of John J.

Oadra. There is no complaint in this appeal concerning that award; therefore, this court's judgment in that regard will be the same as that rendered by the trial court. In all other respects the judgment of the court below is reversed and rendered in favor of appellant Stella A. Oadra.

PAUL PRESSLER, J., not participating.

J. CURTISS BROWN, Chief Justice, dissenting.

I must respectfully dissent from the majority's decision to reverse and render the portion of this case that was brought forward on appeal. Appellant is incorrect in her contention that upon the death of John J. Oadra, she owned all the funds in the account as trustee under Chapter XI of the Texas Probate Code.

John J. Oadra was the grantor of this bank account. He opened and funded .the account with only his money. He earned and contributed 100% of the funds in this account. According to appellant's own testimony, John J. Oadra exercised exclusive control over the funds in the account. He was the only person to deposit to, withdraw from, or change the amounts or terms of the account. From the account's inception in 1982 until his death in 1984, John J. Oadra's funds were re-invested by him, not appellant. Appellant, in signing the account card, was simply placing her signature where she was told to sign. She testified she did not understand what she was signing and was not aware that she was signing the card as a trustee. Further, her testimony established she had no intention to create a trust and was not under the impression that John J. Oadra had given her these funds. Appellant had never even been to Mainland Savings to deal with this account until she went after John J. Oadra's death and changed the name on the account to Stella A. Oadra or Annie Kowis or Walter J. Oadra.

This dissent is founded upon the sound reasoning of Justice Hecht in *Stauffer v. Henderson*, 801 S.W.2d 858 (Tex.1990), and my construction of the statutes. Although Justice Hecht's case did not involve the same type of bank account, his reasoning is equally applicable to the facts of this case.

Ownership of the funds is the primary issue on appeal and the statutes clearly set out the determination of ownership. Section 438 governs the ownership of the funds in this account during the lifetime of all parties. *See* TEX.PROB.CODE ANN. § 438 (Vernon 1980). Subsection (c) states that "a trust account belongs beneficially to the trustee during his lifetime, and if two or more parties are named as trustee ..., during their lifetimes beneficial rights as between them are governed by subsection (a) of this section." TEX.PROB.CODE ANN. § 438(c) (Vernon 1980). Subsection (a) plainly states that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." TEX.PROB. CODE ANN. § 438(a) (Vernon 1980). The jury found by clear and convincing evidence that John J. Oadra did not make a gift of the funds to appellant and that she was not a grantor of the account. Thus, as between appellant and John J. Oadra, during his lifetime and at the time of his death, all funds in the account belonged to John J. Oadra, the sole depositor.

The majority stumps its toe when it continues to apply section 438(c) to this account after the death of one of the parties. Although I agree with the majority that appellant is still a trustee after John J. Oadra's death and would have a right to payment of the funds, section 438(c) cannot vest beneficial ownership of the funds in her. Section 438(c) does not create a right of survivorship between trustees as the majority suggests. Section 438(c) only governs the ownership of the funds in the account while all the parties to the account are still alive. *See* TEX.PROB.CODE ANN. § 438 (Vernon 1980). After one party to a multiple-party account dies, section 439 governs the ownership of the funds. *See* TEX.PROB.CODE ANN. § 439 (Vernon 1980). Thus, after John J. Oadra's death, the ownership of the funds in the account must be determined by section 439. As noted by Justice Hecht:

[S]ection 439 provides the exclusive means for creating a right of survivorship in joint accounts. In addition to simple joint accounts treated in section 439(a), it applies to P.O.D. (payable on death) accounts (section 439(b)) and trust accounts (section 439(c)).

\* \* \* \* \* \*

Section 441 adds: "Transfers resulting from the application of Section 439 of this code are effective by reason of the account contracts involved and this statute and are not to be considered as testamentary or subject to the testamentary provisions of this code."

*Stauffer,* 801 S.W.2d at 862–63.

Subsections (a) and (b) of section 439 do not apply in this case, since the account is not a joint account, or P.O.D. account. *See* TEX.PROB.CODE ANN. § 439(a), (b) (Vernon 1980). Subsection (c) does govern trust accounts, but it states "[i]f the account is a trust account, on death of the trustee or the survivor of two or more trustees, any sums remaining on deposit belong to the person or persons named as beneficiaries, if surviving...." TEX.PROB.CODE ANN. § 439(c) (Vernon 1980). Since appellant is a trustee and is still alive, subsection (c) does not apply to this case. This leaves subsection (d), which applies to all other cases where a party to a multiple-party account has died, and that means this case. Subsection (d) states *"[i]n other cases,* the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of his estate." TEX.PROB.CODE ANN. § 439(d) (Vernon 1980) (emphasis added). Thus, since John J. Oadra owned all the funds in the account during his lifetime, upon his death his ownership is now transferred as part of his estate. Appellant has no ownership in these funds whatsoever.

In *Stauffer,* it was found that the signature card of the joint account in question authorized the *payment* of funds to the survivor of the two account holders but did not create a right of survivorship such that the survivor *owned* the funds. *Stauffer,* 801 S.W.2d at 865–66 (emphasis added). In this case, the majority confuses the right to payment of the funds with ownership of these funds. The language in the account card authorizes Mainland Savings to pay the funds to either John J. Oadra or appellant. However, as section 437 points out "[t]he provisions of Sections 438 through 440 of this code that concern beneficial ownership as between parties, ... are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts." TEX.PROB.CODE ANN. § 437 (Vernon Supp. 1992).

Similarly, section 447, which governs the payment of a trust account, authorizes payment "on request, to any trustee." TEX. PROB.CODE ANN. § 447 (Vernon 1980). But section 448 makes it clear that payment made under section 447 merely "discharges the financial institution from all claims for amounts so paid whether or not the payment is consistent with the beneficial ownership of the account as between the parties...." TEX.PROB.CODE ANN. § 448 (Vernon 1980). The principal purpose of statutes such as section 447 and bank account cards "is to authorize the depository to pay funds in the account upon the direction of any party, not to establish ownership of the funds as between the parties upon the death of one of them." *See Stauffer,* 801 S.W.2d at 861. In this manner, financial institutions are protected from lawsuits brought by beneficiaries, other trustees, and survivors after the death of a party to a multiple-party account. This has nothing to do with establishing ownership of the funds in the account.

Ownership of the funds is established by sections 438 and 439. John J. Oadra's ownership vested in his estate upon his death pursuant to these statutes. In order to change ownership of the funds in the account there must be some act of transfer. In this case, there is no evidence of any act by John J. Oadra to transfer ownership or to relinquish dominion and control of the funds. Instead, appellant's own testimony proved John J. Oadra's continued dominion

and control over the funds right up until his death.

The majority's observation that the Texas Legislature made changes in the Uniform Probate Code when it adopted that Code is correct. However, the majority fails to discuss the basis for those changes or why any changes were even necessary in adopting the Uniform Probate Code. Section 6–104 of the Uniform Probate Code was based on the assumption that when parties create a joint bank account they want the survivor or survivors of the account to own the funds remaining in the account upon the death of one of the parties. UNIF.PROB.CODE § 6–104 comment (1983). In other words, this section of the Uniform Code was drafted to create the presumption that upon the death of one party in a multiple-party account, the surviving parties to the account owned the funds on deposit. *See id.* This is exactly the opposite of the development of joint tenancies with the right of survivorship in Texas. As Justice Hecht noted in *Stauffer,* when joint accounts were authorized under the 1848 Texas statute, a written agreement between the parties to the account was required in order to create a joint tenancy with right of survivorship. *Stauffer,* 801 S.W.2d at 860. This is consistent with the policy in this country which historically was *against* the right of survivorship. *See Stauffer,* 801 S.W.2d at 859–60 (citing C. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY 210–11 (2d ed. 1988)). Although the wording of this section has changed since 1848, the basic presumption against the right of survivorship has "survived" and is embodied in section 439. *See* TEX.PROB.CODE ANN. § 439 (Vernon 1980). Section 439(a) takes the language of section 6–104(a) and adds the specific requirement that a right of survivorship between parties must be expressed in writing in order to be effective. *See* UNIF.PROB.CODE § 6–104(a) (1983); TEX. PROB.CODE ANN. § 439(a) (Vernon 1980).

The removal of section 6–104(c)'s reference to subsection (a) in its adoption by the Texas Legislature, indicates to me that the legislature intended section 439(c) or section 439(d) (the "catchall" subsection) to govern trust accounts. The presumption involved in a trust account under section 439(c) is that the funds should vest in the surviving beneficiary or beneficiaries on the death of the trustee or all trustees. TEX.PROB.CODE ANN. § 439(c) (Vernon 1980). In other words, a trust account specifically creates a right of survivorship between the trustee and the beneficiaries to avoid probate. *See id.* This is the purpose of such accounts, and there is no need for a separate written agreement as required by subsection (a) of section 439. The idea that section 438(c) creates a right of survivorship between multiple trustees so that upon the death of one trustee the funds in the account somehow automatically vest in the other trustee or trustees is antagonistic toward the statutory intent of section 439(c). In general, such a right of survivorship between trustees would defeat the intent that section 439 govern exclusively the right of survivorship between parties to multiple-party accounts. *See Stauffer,* 801 S.W.2d at 862–63. Further, it defeats the purpose of having section 439(d) which is to govern the right of survivorship in multiple-party accounts when the other subsections of section 439 do not apply. TEX. PROB.CODE ANN. § 439(d) (Vernon 1980). I find nothing in the majority's discussion of the changes made to the Uniform Probate Code in its adoption by the Texas Legislature, which would support or justify such an outcome.

Death is unwelcome under any circumstances, but under the majority's decision John J. Oadra's murder proved to be disastrous for his estate. The result reached by the majority diminishes John J. Oadra's estate by over $400,000 solely due to his untimely death. Additionally, the majority's findings are in direct contravention with the jury findings at trial. The jury found by clear and convincing evidence that John J. Oadra did not make a gift of the funds in the account to Stella A. Oadra and that Stella A. Oadra was not a grantor of the account. For this Court to set aside these jury findings, the evidence must be legally or factually insufficient to support them. Such is not the case in this instance

since an examination of the record reveals there is ample evidence to support the jury findings. *See Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Further, the majority's decision is in direct conflict with the longstanding policy in Texas that the right of survivorship as a legal incident of joint ownership or joint accounts is not favored. *See Stauffer,* 801 S.W.2d at 859–60 (citing C. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY 210–11 (2d ed. 1988)). The consequences of such a decision are that the creditors of John J. Oadra's estate are cheated and his intended beneficiaries are denied their rightful inheritance. A man who funded a bank account and put his mother's name on it for tax purposes is now having those funds taken away from the rightful owner, his estate.

The trial court properly held that appellant did not own the funds in the account. Instead of awarding the funds to specific individuals, however, the trial court should have awarded the funds to Robin Denise Oadra Stegall, as successor administratrix of the Estate of John J. Oadra. For the reasons stated above, I respectfully dissent. I would not sustain appellants' point of error, but rather would affirm as modified the trial court's judgment.

SEARS, J., joins in this dissent.